*Whitaker v. Dolton West SD #148; et al.*

# Defendants' Exhibit A

FILED
4/30/2025 1:53 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L005724
Calendar, I
32508047

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

DR. SONYA WHITAKER,
    Plaintiff,

v.

DR. KEVIN J. NOHELTY, Superintendent,
In his official and individual capacity, and

DOLTON WEST SCHOOL DISTRICT
148 BOARD OF EDUCATION,
    Defendants.

Civil Case No.: _____

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Dr. Sonya Whitaker, by and through her undersigned counsel, hereby submits this Amended Complaint against Defendants Dr. Kevin J. Nohelty and Dolton West School District 148 Board of Education, stating as follows:

### I. INTRODUCTION

1. This is a civil action seeking declaratory relief, injunctive relief, back pay, front pay, compensatory damages, liquidated damages, and other remedies for violations of Plaintiff's rights under the Illinois Whistleblower Act, breach of employment contract, violations of due process, defamation, and tortious interference with contract.

### II. PARTIES

2. Plaintiff, Dr. Sonya Whitaker, is a resident of Chicago, Cook County, Illinois, and was wrongfully terminated as the Deputy Superintendent of Schools for Dolton West School District 148 as of January 16, 2025, as confirmed in the termination letter dated January 21, 2025. Dr. Whitaker reported directly to Defendant, Dr. Kevin J. Nohelty, Superintendent of Schools.

1

3. Defendant, Dr. Kevin Nohelty, is the Superintendent of Schools and Chief School Business Official for Dolton West School District 148. He is sued in both his official and individual capacities.

4. Defendant, Dolton West School District 148 Board of Education, is a local public entity as defined by 745 ILCS 10/1-206 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, operating under the laws of the State of Illinois.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims in this action as they arise under the laws of the State of Illinois.

6. Venue is proper in this district pursuant to 735 ILCS 5/2-101, as the transactions out of which this cause of action arose occurred in Cook County, Illinois, and all defendants reside or have their principal place of business in Cook County.

### IV. FACTUAL ALLEGATIONS

7. On October 22, 2019, Dr. Whitaker entered into a contractual agreement with Dolton West School District 148 to serve as Deputy Superintendent from July 1, 2020, to June 30, 2025. The contract with Dr. Whitaker was later extended to June 30, 2026. Dr. Whitaker is under contract as Deputy Superintendent of Schools as a professional employee.

8. Throughout her tenure, Dr. Whitaker consistently received "Excellent" performance ratings from Defendant Nohelty in all evaluated categories, including instructional leadership, school management, and community relations, for the 2020-2021, 2021-2022, and 2022-2023 school years. No deficiencies or performance related issues

2

were noted by Defendant Nohelty during the performance evaluation periods, and no notice was ever given to Plaintiff Whitaker by Defendant Nohelty concerning performance related issues or suspected violations of Plaintiff Whitaker's contract.

9. In February 2024, the Board of Education approved a retroactive pay increase for Dr. Whitaker upon the recommendation of Defendant Nohelty, further demonstrating her exemplary performance.

10. On May 22, 2024, Dr. Whitaker personally raised concerns with the members of the board of education about her concerns related to fiscal management of the superintendent of schools. She requested the opportunity to speak with the board formally and on the record regarding her concerns. Her request was not granted.

11. On June 6, 2024, Dr. Whitaker again raised the concerns about the financial management of public funds within the District via voicemail to Board President Larry Lawrence, requesting that she needed to speak with the board president about her concerns related to fiscal management and the superintendent of schools. Specifically, Dr. Whitaker discovered that ESSER III funds were allocated to projects without proper documentation or board approval, potentially violating federal grant requirements. The board president indicated that he would grant Dr. Whitaker an audience with him upon his return from travel, however he never met with her nor allowed her to speak with the members of the board of education.

   Dr. Whitaker's ESSER III fund concerns included:
   a. $13M reallocated without board approval (June 2024)
   b. Documentation gaps violating financial control standards
   c. ISBE watchlist confirmation

12. It was on the same day, June 6, 2024, that Dr. Whitaker also spoke with other board members seeking an audience regarding her concerns, to no avail.

13. On June 10, 2024, and again on June 24, 2024, Dr. Whitaker raised concerns about the fiscal management of public funds directly with Defendant Nohelty, the superintendent of schools. Specifically, Dr. Whitaker raised concerns related to the reallocation of approximately thirteen million dollars ($13,000,000) of the federal Elementary and Secondary School Emergency Relief Funds (ESSER III).

14. Dr. Whitaker was directed by Defendant Nohelty to plan to make changes to the ESSER III Grant after the funds had already been allocated in the budget line-item statement as presented to the Illinois State Board of Education and to the Dolton West School District 148 board in numerous public Board of Education meetings.

15. Within two weeks of raising these concerns and refusing to participate in the wrongdoing, Dr. Whitaker was excluded from key meetings and decision-making processes, demonstrating a clear temporal connection between her protected activity and the adverse actions.

16. On July 2, 2024, without warning or following proper procedures as required in the District's policies, Defendant Nohelty suspended Dr. Whitaker with pay, without specific notice of the charges and in violation of the Board's policies. The notice indicated that the paid administrative leave was to end on July 15, 2024.

17. On, or about July 2, 2024, Defendant Nohelty engaged members of the superintendent's cabinet to review Dr. Whitaker's previously approved reports to the Board of Education under the guise of, and as pretext for claiming to find misstatements or false content. Defendant Nohelty used the false "investigation" as an act of retaliation and to provide fraudulent support for the anticipated termination

4

process, as was established in the testimony of members of the cabinet in the termination hearing of Dr. Whitaker that was held between September 23, 2024, and November 18, 2024.

18. On or about August 7, 2024, Dr. Whitaker spoke with the Deputy Officer for Instructional Education for the Illinois State Board of Education about her concerns, and confirmed those concerns in an email, detailing the content of their phone conversation.

19. On August 19, 2024, Defendant Nohelty issued a pre-suspension notification letter indicating the Board's intent to consider both suspension without pay and termination of Dr. Whitaker. The Defendants failed to comply with Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure by failing to provide proper notice and due process.

20. In the notice, Defendants accused Dr. Whitaker of 20 alleged acts of misconduct, including theft of public property and unlawful harassment.

21. In September 2024, the Illinois State Board of Education issued School District Financial Profile Scores indicating that Dolton West School District 148 received the lowest financial profile of any reporting school district in the State of Illinois based on 2023 financial data, being placed on the financial watch list for the second year in a row. This report directly corroborates Dr. Whitaker's concerns about financial mismanagement within the District.

22. In September 2024, members of the Dolton West School District 148 were made aware of the District's financial status contained in the report at a public session meeting of the Board. Dr. Nohelty had not previously informed the Board of the District's financial condition.

23. On September 5, 2024, Hon. Mathias Delort was appointed by the Board of Education to serve as the independent hearing officer during the pre-termination process.

24. Dr. Sonya Whitaker, nor her counsel were permitted to participate in the selection process of the independent hearing officer.

25. During the September 5, 2024, Board meeting, Hearing Officer Delort was asked about prior relationships with either of the firms involved in the investigation and administrative processes against Dr. Whitaker. Hearing Officer Delort indicated no prior relationship with the firms. However, Hearing Officer Delort failed to disclose to the Board that he had worked with the board attorney who conducted the investigation into the allegations against Dr. Whitaker, and who had also reached out to him to recruit his service as independent hearing officer.

26. Upon information and belief, Defendant Nohelty and Board President Lawrence held multiple private meetings to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation and refused to participate in the wrongdoing.

27. Upon information and belief, Defendant Nohelty and Board Chair Lawrence tortiously secured the termination testimony against Dr. Whitaker by manipulating the Board of Education to approve multi-year contracts for witnesses who would be relied upon to testify against Dr. Whitaker during the pre-termination hearing.

28. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding

6

misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

29. Hearing Officer Delort oversaw several days of the pre-termination hearing from September thru December 2024. At no point during this period did Hearing Officer Delort update the Board concerning his prior relationship with Board counsel.

30. During the pre-termination hearings, Dr. Whitaker requested to call members of the Board of Education as fact witnesses in her matter, as many of the allegations made by employees referenced alleged conduct by Dr. Whitaker in the presence of named Board members.

31. The request to call current members of the Board of Education became necessary after the District's counsel objected to the former board chair of the District coming to testify due to standing court orders prohibiting the former member's presence on District grounds and the District's assertion that it would not lift the no trespass order that had been issued.

32. The District was then tasked with making technology considerations for remote testimony. Those considerations were not achieved.

33. After brief argument from counsels before the Hearing Officer, the request to call members of the Board of Education was denied, constituting a constraint on Dr. Whitaker's due process rights under *Stratton v. Wenona Cmty. Unit Dist. No. 1*, 2022 IL App (3d) 210187.

34. On December 20, 2024, Hearing Officer Delort issued the Final Report and Recommendations concerning Dr. Whitaker. In the report, Hearing Officer Delort describes the acknowledgement of the prior working relationship with District counsel who had investigated Dr. Whitaker, and had recruited him to serve as

7

hearing officer. That disclosure, per the report, took place on September 20, 2024. However, that disclosure was never shared with the Board to determine whether a conflict existed that would inhibit Dr. Whitaker's right to a fair hearing.

35. Hearing Officer Delort's report also makes substantive errors indicating a grave misunderstanding of the process to be followed. Namely, Hearing Officer Delort considered the September 5, 2024, suspension hearing before the Board of Education the "pre-termination hearing." Further, Hearing Officer Delort references the actual hearing conducted between September and December 2024, as the "post-termination hearing."

36. On January 16, 2025, Dr. Whitaker was terminated from her role with Dolton West School District 148 Board of Education at the direction of Dr. Nohelty, as confirmed in the termination letter dated January 21, 2025, which referenced the Board's adoption of Hearing Officer Delort's Final Report and Recommendations.

37. There has been no notice of, nor a setting for any such "post-termination hearing" in this matter.

38. But for Dr. Whitaker's protected whistleblowing activities regarding the misallocation of ESSER III funds, she would not have been subjected to adverse employment actions culminating in her termination.

39. As a result of Defendants' actions, Dr. Whitaker has suffered loss of income exceeding $250,000, severe and extreme emotional distress, legal fees and costs, and significant damage to her professional reputation in the education community.

V. CLAIMS

**COUNT I – VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT**
*(All Defendants)*

40. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

41. The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., as amended effective January 1, 2025, prohibits retaliation against employees who disclose information about suspected violations of state or federal laws, rules, or regulations.

42. Pursuant to the Illinois Whistleblower Act (740 ILCS 174/15 and 174/20): an Employer may not retaliate against any employee for disclosing information to agencies or refusing to participate in an activity in which the employee had "reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

43. The 2025 amendments to the Illinois Whistleblower Act expanded the definition of "retaliatory action" to include any action that would dissuade a reasonable worker from engaging in protected activity, increased available remedies to include liquidated damages, and provided for civil penalties up to $10,000 per violation.

44. Dr. Whitaker reasonably believed that Defendant Nohelty misused federal funds when $13 million dollars of ESSER III funds were reallocated and the ESSER III budget was revised by Defendant Nohelty without complete disclosure to the Board.

45. Dr. Whitaker's reporting of potential misuse of federal funds falls squarely within the protected activities under the Illinois Whistleblower Act, as it involves disclosure of suspected violations of federal regulations governing grant fund usage based on a reasonable belief.

46. Dr. Whitaker engaged in protected activity when she:

9

   a. Raised concerns with board members on May 22, 2024;

   b. Reported concerns to Board President Lawrence on June 6, 2024;

   c. Reported concerns to the board vice-president on June 6, 2024;

   d. Reported concerns to Defendant Nohelty on June 10 and June 24, 2024; and

   e. Reported concerns to the Illinois State Board of Education on August 7, 2024.

47. Defendants' retaliatory actions against Dr. Whitaker included:

   a. Exclusion from key meetings within two weeks of her protected activity;

   b. Suspension with pay on July 2, 2024;

   c. Initiation of a pretextual investigation on July 2, 2024;

   d. Pre-suspension notification on August 19, 2024;

   e. Suspension without pay on September 5, 2024;

   f. Public humiliation through broadcast of defamatory allegations on September 5, 2024; and

   g. Termination on January 16, 2025.

48. But for Dr. Whitaker's protected whistleblowing activities, Defendants would not have taken these adverse actions against her.

49. The temporal proximity between Dr. Whitaker's protected activities and the adverse employment actions, combined with her history of excellent performance evaluations and recent merit pay increase, demonstrates a clear causal connection between her whistleblowing and the retaliation she suffered.

50. Defendants' retaliatory actions against Dr. Whitaker violated Section 15(b) of the Illinois Whistleblower Act when they terminated her employment with the District on January 16, 2025.

51. Defendants' retaliatory actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

### COUNT II – BREACH OF EMPLOYMENT CONTRACT
*(All Defendants)*

52. Plaintiff incorporates by reference the allegations in the preceding paragraphs.
53. Dr. Whitaker entered into a valid and enforceable employment contract with Dolton West School District 148 on October 22, 2019, which was later extended through June 30, 2026.
54. Dr. Whitaker performed all duties required under the contract and consistently received "Excellent" performance ratings.
55. Defendants breached the employment contract by terminating Dr. Whitaker without proper cause and in violation of the contractual terms governing termination procedures.
56. Defendants' breach of contract has caused Dr. Whitaker to suffer damages including lost wages, benefits, and other compensation she would have received had the contract been honored through its full-term ending June 30, 2026.
57. Defendants' actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

### COUNT III – DUE PROCESS VIOLATIONS
*(All Defendants)*

58. Plaintiff incorporates by reference the allegations in the preceding paragraphs.
59. As a public employee with a contractual right to continued employment through June 30, 2026, Dr. Whitaker had a protected property interest in her continued employment.

60. Article I, Section 2 of the Illinois Constitution of 1970 provides: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

61. Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure establish specific procedural requirements that must be followed before an employee can be suspended or terminated.

62. Defendants violated these policies and Dr. Whitaker's due process rights under the Illinois Constitution by:

    a. Failing to follow the progressive discipline procedures outlined in District policies;

    b. Denying Dr. Whitaker the opportunity to call and question named members of the Board who had been referenced as being present for some of the alleged incidents that the District maintained constituted a violation of District policy;

    c. Failing to provide adequate notice and a meaningful opportunity to be heard prior to termination.

63. These procedural violations deprived Dr. Whitaker of her right to fair process before being deprived of her property interest in continued employment, as required by Illinois law (*Stratton v. Wenona Cmty. Unit Dist. No. 1*, 2022 IL App (3d) 210187; *Lewis E. v. Spagnolo*, 186 Ill. 2d 198 (1999)).

64. Defendants' actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

## COUNT IV – COMMON LAW RETALIATORY DISCHARGE
*(All Defendants)*

65. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Plaintiff was discharged from her position as Deputy Superintendent on January 16, 2025, by Defendants' adoption of Hearing Officer Delort's recommendation.

67. Plaintiff engaged in protected activity under Illinois public policy by:

    a. Reporting misuse of $13M in federal ESSER III funds to internal administrators (May–June 2024);

    b. Refusing to participate in unlawful reallocation of funds as directed by Defendant Nohelty (June 24, 2024);

    c. Disclosing financial mismanagement to the Illinois State Board of Education (August 7, 2024).

68. Plaintiff's termination violates Illinois' clearly mandated public policy, as articulated in:

    a. The Illinois Constitution's guarantee of government integrity (Ill. Const. 1970, Preamble; Art. VIII, §1);

    b. Federal grant compliance regulations (2 C.F.R. §200.302);

    c. The Illinois Whistleblower Act's recognition of public fund misuse as a matter of statewide concern (740 ILCS 174/5).

69. The temporal proximity between Plaintiff's protected activity (final report: June 24, 2024) and her suspension (July 2, 2024) and termination (January 16, 2025), combined with Defendants' pretextual investigation and denial of due process, establishes retaliation as the motivating factor for discharge (*Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494 (2009)).

70. Plaintiff suffered lost wages exceeding $250,000, emotional distress, reputational harm, and loss of career advancement opportunities.

71. Plaintiff engaged in protected activity by repeatedly disclosing, both internally and externally, her reasonable belief that Defendant Nohelty was misallocating and mismanaging federal ESSER III funds, in violation of federal grant requirements and state law.

72. Plaintiff's protected disclosures included, but were not limited to:

    a. Raising concerns with members of the Board of Education on May 22, 2024;

    b. Reporting concerns to Board President Lawrence and the board vice-president on June 6, 2024;

    c. Reporting concerns to Defendant Nohelty, Superintendent, on June 10 and June 24, 2024;

    d. Reporting concerns to the Illinois State Board of Education on August 7, 2024.

73. Plaintiff also refused to participate in the misallocation of federal funds, as directed by Defendant Nohelty, which would have constituted a violation of federal law.

74. In direct retaliation for Plaintiff's protected disclosures and refusal to participate in unlawful conduct, Defendants subjected Plaintiff to escalating adverse employment actions, culminating in her retaliatory dismissal on January 16, 2025.

### COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT
*(All Defendants)*

75. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

76. Dr. Whitaker had a valid contractual relationship with Dolton West School District 148 through June 30, 2026.

77. Defendant Nohelty was aware of this contractual relationship and had recommended extensions to Dr. Whitaker's initial contract terms.

78. Defendant Dolton West School District 148 Board of Education was aware of the contractual relationship with Dr. Whitaker as the Board of Education ratified all personnel actions concerning performance, contract terms, and salary since Dr. Whitaker first joined the District in 2019.

79. Defendant Nohelty intentionally and unjustifiably induced the Board to breach Dr. Whitaker's employment contract by:

    a. Initiating the completion of a pretextual investigation report on July 2, 2024;

    b. Engaging cabinet members (District employees) to review previously Superintendent-approved reports to find or fabricate evidence against Dr. Whitaker;

    c. Presenting false allegations to the Board without factual basis;

    d. Recommending Dr. Whitaker's suspension and termination without legitimate cause;

    e. Recommending Dr. Whitaker's termination for conduct wherein Dr. Whitaker had not been given notice concerning the alleged acts prior to the adverse actions being initiated;

    f. Defendant Nohelty acted to conceal fiscal mismanagement by initiating Dr. Whitaker's termination for conduct that Dr. Whitaker had received no notice; and

    g. Holding private meetings with Board President Lawrence to orchestrate Dr. Whitaker's removal.

80. Defendant Nohelty and Board Chair Larry Lawrence worked in concert to remove Dr. Whitaker from her position.

81. Board Chair Larry Lawrence improperly influenced the process of Dr. Whitaker's eventual termination by making it clear to other board members that he intended to "take care of Whitaker."

82. Board Chair Lawrence improperly and tortiously used his position to deny Plaintiff Whitaker of due process in her protected interest of her employment as Deputy Superintendent by coordinating with members of the Board of Education the eventual actions taken against Plaintiff Whitaker.

83. As a direct result of Defendant Nohelty and the Board of Education's tortious interference, Dr. Whitaker's employment contract was breached, causing her significant financial and professional harm.

84. Defendants' actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests:

a. Issue a declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of Illinois;

b. Issue an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

c. Award damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm in excess of $250,000.00;

d. Award compensatory damages in an amount to be determined at trial, including but not limited to back pay, front pay, retirement contribution, and damages for emotional distress and reputational harm;

16

e. Award liquidated damages under the amended Illinois Whistleblower Act;

f. Impose civil penalties against Defendants up to $10,000 as provided under the amended Illinois Whistleblower Act;

g. Grant injunctive relief, including reinstatement of Dr. Whitaker to her position as Deputy Superintendent and removal of any adverse employment actions from Plaintiff's personnel record;

h. Award pre-judgment and post-judgment interest at the highest lawful rate;

i. Award attorney's fees and costs pursuant to applicable statutes;

j. Grant such other and further relief as this Court deems just and proper.

**Dated:** April 28, 2025

Respectfully submitted,

/s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq., #57528
Hall-Jackson & Associates, PC
180 West Washington Street, Suite 820
Chicago, IL 60602
(312) 255-7105
chj@hall-jacksonandassociates.com
*One of Plaintiff's Attorneys*

/s/ Sheridan "Todd" Yeary
Sheridan "Todd" Yeary, Esq., #102472
The Yeary Firm, LLC
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
*One of Plaintiff's Attorneys*

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| DR. SONYA WHITAKER,<br>　　　Plaintiff,<br><br>　　　v.<br><br>DR. KEVIN J. NOHELTY, Superintendent,<br>In his official and individual capacity, and<br><br>DOLTON WEST SCHOOL DISTRICT<br>148 BOARD OF EDUCATION,<br>　　　Defendants. | \*<br>\*<br>\*<br>\*<br>\*. Civil Case No._____<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all matters so triable.

Dated: April 28, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Chiquita Hall-Jackson
　　　　　　　　　　　　　　　　　　　　Chiquita Hall-Jackson, Esq., #57528
　　　　　　　　　　　　　　　　　　　　Hall-Jackson & Associates, PC
　　　　　　　　　　　　　　　　　　　　180 West Washington Street, Suite 820
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60602
　　　　　　　　　　　　　　　　　　　　(312) 255-7105
　　　　　　　　　　　　　　　　　　　　chj@hall-jacksonandassociates.com
　　　　　　　　　　　　　　　　　　　　*One of Plaintiff's Attorneys*

　　　　　　　　　　　　　　　　　　　　/s/ Sheridan "Todd" Yeary
　　　　　　　　　　　　　　　　　　　　Sheridan "Todd" Yeary, Esq., #102472
　　　　　　　　　　　　　　　　　　　　The Yeary Firm, LLC
　　　　　　　　　　　　　　　　　　　　P.O. Box 682
　　　　　　　　　　　　　　　　　　　　Columbia, MD 21045
　　　　　　　　　　　　　　　　　　　　(202) 770-7204 (o); (410) 275-3199 (f)
　　　　　　　　　　　　　　　　　　　　styeary@yearylegal.com
　　　　　　　　　　　　　　　　　　　　*One of Plaintiff's Attorneys*