*Whitaker v. Dolton West SD #148; et al.*

# Defendants' Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DR. SONYA WHITAKER,                          *
                                              *
Plaintiff,                                    *
                                              *     Case No. 1:24-cv-08308
v.                                            *
                                              *     Hon. Franklin U. Valderrama
DR. KEVIN J. NOHELTY, Superintendent          *
In his official and individual capacity, and  *
DOLTON WEST SCHOOL DISTRICT 148                *
BOARD OF EDUCATION,                            *
                                              *
Defendants.                                   *
                                              *

**************************************************************************************************

## FIRST AMENDED COMPLAINT - JURY TRIAL DEMANDED

Plaintiff Dr. Sonya Whitaker, by and through her undersigned counsel, hereby submits

this First Amended Complaint against Defendants Dr. Kevin J. Nohelty and Dolton West

School District 148 Board of Education, alleging as follows:

### I.      INTRODUCTION

This is a civil action seeking declaratory relief, injunctive relief, back pay, front pay,

compensatory damages, punitive damages, and other remedies for violations of Plaintiff's

constitutional and statutory rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Illinois

Whistleblower Act, for breach of contract under Illinois law, for abuse of process under

Illinois law, for defamation under Illinois law, and for civil conspiracy under 42 U.S.C. §

1985(3).

1

## II.    PARTIES

1. Plaintiff, Dr. Sonya Whitaker, is an African American female residing in Chicago, Illinois, and was employed as Deputy Superintendent of Schools for Dolton West School District 148 from July 1, 2020, until her suspension without pay on September 5, 2024. She is a member of a protected class under federal law, including 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Dr. Whitaker is the only African American serving in a superintendent or deputy superintendent role in Dolton West School District 148. Dr. Whitaker reports directly to Defendant, Dr. Kevin J. Nohelty, Superintendent of Schools.

2. Defendant, Dr. Kevin Nohelty, is a Caucasian male, and is the Superintendent of Schools and Chief School Business Official for Dolton West School District 148, acting under color of state law within the meaning of 42 U.S.C. § 1983. He is sued in both his official and individual capacities.

3. Defendant, Dolton West School District 148 Board of Education, is a local governmental entity operating under the laws of the State of Illinois and is an employer within the meaning of relevant federal and state statutes.

## III.    JURISDICTION AND VENUE

4. This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, and 1985(3).

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they

2

form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all defendants reside in this district and a substantial part of the events giving rise to this action occurred within this district.

## IV.    FACTUAL ALLEGATIONS

7. On October 22, 2019, Dr. Whitaker entered into a contractual agreement with Dolton West School District 148 to serve as Deputy Superintendent from July 1, 2020, to June 30, 2025. The contract with Dr. Whitaker was later extended to June 30, 2026. Dr. Whitaker is under contract as Deputy Superintendent of Schools as a professional employee.

8. Throughout her tenure, Dr. Whitaker consistently received "Excellent" performance ratings from Defendant Nohelty in all evaluated categories, including instructional leadership, school management, and community relations, for the 2020-2021, 2021-2022, and 2022-2023 school years. No deficiencies or performance related issues were noted by Defendant Nohelty during the performance evaluation periods, and no notice was ever given to Plaintiff Whitaker by Defendant Nohelty concerning performance related issues or suspected violations of Plaintiff Whitaker's contract.

9. In February 2024, the Board of Education approved a retroactive pay increase for Dr. Whitaker upon the recommendation of Defendant Nohelty, further demonstrating her exemplary performance.

3

10. On May 22, 2024, Dr. Whitaker personally raised concerns with the members of the board of education about her concerns related to fiscal management of the superintendent of schools. She requested the opportunity to speak with the board formally and on the record regarding her concerns. Her request was not granted.

11. On June 6, 2024, Dr. Whitaker again raised the concerns about the financial management of public funds within the District via voicemail to Board President Larry Lawrence, requesting that she needed to speak with the board president about her concerns related to fiscal management and the superintendent of schools. Specifically, Dr. Whitaker discovered that ESSER III funds were allocated to projects without proper documentation or board approval, potentially violating federal grant requirements. The board president indicated that he would grant Dr. Whitaker an audience with him upon his return from travel, however he never met with her nor allowed her to speak with the members of the board of education.

12. It was on the same day, June 6, 2024, that Dr. Whitaker also spoke with the board vice-president regarding her concerns, to no avail.

13. On June 10, 2024, and again on June 24, 2024, Dr. Whitaker raised concerns about the fiscal management of public funds directly with Defendant Nohelty, the superintendent of schools. Specifically, Dr. Whitaker raised concerns related to the reallocation of approximately thirteen million dollars ($13,000,000) of the federal Elementary and Secondary School Emergency Relief Funds (ESSER III).

14. Dr. Whitaker was directed by Defendant Nohelty to plan to make changes to the ESSER III Grant after the funds had already been allocated in the budget line item

statement as presented to the Illinois State Board of Education and to the Dolton West School District 148 board in numerous public board of education meetings.

15. Within two weeks of raising these concerns and refusing to participate in the wrongdoing, Dr. Whitaker was excluded from key meetings and decision-making processes, demonstrating a clear temporal connection between her protected activity and the adverse actions.

16. On July 2, 2024, without prior warning or following proper procedures as required in the District's policies, Defendant Nohelty suspended Dr. Whitaker with pay, without specific notice of the charges and in violation of the Board's policies. The notice indicated that the paid administrative leave was to end on July 15, 2024.

17. On, or about July 2, 2024, Defendant Nohelty tortiously and improperly interfered with Dr. Whitaker's employment contract by engaging members of the superintendent's cabinet to review Dr. Whitaker's previously approved reports to the Board of Education under the guise of finding misstatements or false content. Defendant Nohelty used the false "investigation" as an act of retaliation and to provide fraudulent support for the anticipated termination process, as was established in the testimony of members of the cabinet in the termination hearing of Dr. Whitaker that was held between September 23, 2024, and November 18, 2024.

18. On or about August 7, 2024, Dr. Whitaker spoke with the Deputy Officer for Instructional Education for the Illinois State Board of Education about her concerns, and confirmed those concerns in an email, detailing the content of their phone conversation.

19. On August 19, 2024, Defendant Nohelty issued a pre-suspension notification letter indicating the Board's intent to consider both suspension without pay and termination of Dr. Whitaker. The Defendants failed to comply with Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure by failing to provide proper notice and due process.

20. In the notice, Defendants accused Dr. Whitaker of 20 alleged acts of misconduct, including theft of public property and unlawful harassment.

21. On September 5, 2024, while violating board policies and procedures, Defendants suspended Dr. Whitaker without pay. This action was taken at a specially convened Board meeting where the agenda item regarding Dr. Whitaker was publicly posted to publicly humiliate Dr. Whitaker and causing emotional distress.

22. During the September 5, 2024, meeting Defendant Nohelty, through legal counsel, formally presented the charges against Dr. Whitaker to the full school board, including false accusations of theft, bullying, and falsification of student data. The meeting was held in open session and broadcast via the internet, causing further damage to Dr. Whitaker's reputation.

23. In September 2024, the Illinois State Board of Education issued School District Financial Profile Scores indicating that Dolton West School District 148 received the lowest financial profile of any reporting school district in the State of Illinois based on 2023 financial data, being placed on the financial watch list for the second year in a row.

24. In September 2024, members of the Dolton West School District 148 were made aware of the District's financial status in a report at a public session meeting of the

Board. Dr. Nohelty had not previously informed the Board of the District's financial condition.

25. Upon information and belief, Defendant Nohelty and Board President Lawrence held multiple private meetings to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation and refused to participate in the wrongdoing.

26. Dr. Whitaker, as the only African American in a senior leadership position, was subjected to heightened scrutiny and harsher disciplinary measures compared to her non-minority colleagues. For example, while Dr. Whitaker was suspended without pay for raising concerns about fiscal mismanagement, non-African American administrators who raised similar concerns were not disciplined or subjected to termination proceedings.

27. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

28. As a result of Defendants' actions, Dr. Whitaker has suffered loss of income exceeding $250,000, severe emotional distress, and significant damage to her professional reputation in the education community.

## V. CLAIMS FOR RELIEF

### Count I: *Violation of 42 U.S.C. §1981*

29. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

30. Dr. Whitaker is an African American woman and is a member of a protected class under federal law.

31. Defendants' malicious and unwarranted actions have interfered with Plaintiff's contractual rights and constitute racial discrimination, in violation of 42 U.S.C. § 1981.

32. Defendant demonstrated similar malicious and unwarranted actions directed toward the African American female predecessor to Dr. Whitaker, Dr. Patricia Moore in 2019.

33. Defendant Nohelty''s demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker to her African American female curriculum coordinator, Dornetta Walker. Ms. Walker was a direct report to Dr. Whitaker.

34. Defendant Nohelty's demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker toward Dr. Lisa Davis-Smith, former director of state and federal grants. Dr. Davis left the district's employ in 2020.

35. Defendant's malicious and unwarranted actions have caused economic, emotional, and reputational harm to Dr. Whitaker.

36. The actions taken against Dr. Whitaker, including her suspension without pay and the initiation of termination proceedings, were motivated by racial animus and constituted intentional discrimination. Similarly situated non-African American employees, such as John Donermeyer, Melanie Llanes, and Nancy Perkins were

8

not subjected to the same adverse actions or level of scrutiny for actual performance deficiencies as Dr. Whitaker.

Count II: *First Amendment Retaliation - 42 U.S.C. §1983*

37. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

38. Defendants, acting under color of state law, violated Plaintiff's First Amendment rights by retaliating against her for protected speech on matters of public concern, namely the misuse of public funds.

39. Dr. Whitaker's speech regarding misallocation of federal funds is a matter of public concern as it directly affects the educational resources available to students and the proper use of taxpayer money.

40. Dr. Whitaker's reporting of potential misuse of ESSER III funds went beyond her official duties as Deputy Superintendent. She spoke as a private citizen on a matter of public concern when she raised these issues directly with the Board President and members of the Board of Education, which was outside her normal chain of command and not part of her regular job responsibilities.

41. Dr. Whitaker's interest in speaking out on this matter of public concern outweighs any governmental interest in efficiency.

42. There is a direct causal link between Dr. Whitaker's protected speech and the adverse employment actions taken against her, as evidenced by the close temporal proximity between her reports of misconduct and her suspension.

43. Defendants' actions caused emotional and reputational harm through the improper use of disciplinary action to chill Dr. Whitaker's constitutional right to speech and to inflict economic, reputational, and emotional harm on her.

Count III: *Equal Protection Violation - 42 U.S.C. §1983*

44. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

45. Defendants, acting under color of state law, violated Plaintiff's Fourteenth Amendment right to equal protection by discriminating against her on the basis of race.

46. Dr. Whitaker was treated differently from similarly situated non-African American employees with respect to disciplinary actions, scrutiny of her work, and the application of district policies and procedures.

47. The disparate treatment of Dr. Whitaker was motivated by racial animus and lacked any rational basis.

48. As a result of this discriminatory treatment, Dr. Whitaker has suffered economic losses, emotional distress, and damage to her professional reputation.

Count IV: *Violation of Illinois Whistleblower Act*

49. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50. The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., prohibits retaliation against employees who disclose information about suspected violations of state or federal laws, rules, or regulations.

51. Dr. Whitaker's reporting of potential misuse of federal funds to the Deputy Officer for Instructional Education for the Illinois State Board of Education falls squarely within the protected activities under the Illinois Whistleblower Act, as it involves disclosure of suspected violations of federal regulations governing grant fund usage to a third party.

10

52. Defendants' retaliatory actions against Dr. Whitaker for raising concerns about the financial management of public funds and refusing to participate in the wrongdoing violated Sections 15(a), 15(b), and 20.1 of the Illinois Whistleblower Act.

53. Defendants' retaliatory actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

Count V: *Breach of Contract*

54. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

55. Dr. Whitaker had a valid employment contract with Dolton West School District 148, which Defendants breached by suspending her without pay and attempting to terminate her employment without cause or proper procedures as outlined in the contract and District policies.

56. The District breached Dr. Whitaker's employment contract by suspending her without pay on September 5, 2024, without following the proper procedures outlined in Section 11(d) of her contract, which requires that, "[T]ermination of the Employee's employment shall be subject to the terms and procedures of the Illinois School Code."

57. Additionally, the District violated Board Policy 5:240 by failing to adhere to the District's policy when Defendant Nohelty failed to "meet with the employee to present the allegations and give the employee an opportunity to refute the charges" prior to her suspension.

58. The Board's adverse action to suspend Dr. Whitaker, first with pay then without pay, while knowingly and intentionally disregarding the board's policies concerning

such actions, establish the malicious and reckless harm done to Dr. Whitaker economically, emotionally, and to her reputation.

59. As a direct result of this breach, Dr. Whitaker has suffered economic losses, including lost wages and benefits.

Count VI: <em>Abuse of Process</em>

60. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

61. Defendants willfully misused the District's disciplinary process against Dr. Whitaker for an improper and ulterior purpose, namely to retaliate against her for her protected whistleblowing activity and to discriminate against her on the basis of race.

62. Defendants' actions were not proper in the regular prosecution of the proceedings, as they were motivated by retaliatory intent rather than legitimate disciplinary concerns.

63. Defendants took specific actions in furtherance of this abuse, including initiating suspension and termination proceedings without proper cause or following established procedures.

64. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

65. As a result of Defendants' abuse of process, Dr. Whitaker has suffered damage to her professional reputation, loss of income, and emotional distress.

## Count VII: *Defamation*

66. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

67. Defendants knowingly made false and defamatory statements about Dr. Whitaker, including accusations of theft, bullying, and falsification of student data.

68. These statements were published to third parties during the September 5, 2024, board meeting, which was broadcast via the internet and widely disseminated.

69. The defamatory statements made by Defendants went beyond the scope of any privileged communication in administrative proceedings. Defendants maliciously publicized false accusations of theft and misconduct in open board meetings and through internet broadcasts, causing harm to Dr. Whitaker's reputation beyond what was necessary for any legitimate disciplinary purpose.

70. The false allegations have damaged Dr. Whitaker's reputation, causing her to suffer emotional distress and financial harm.

71. Defendants acted with actual malice, knowing the statements were false or with reckless disregard for their truth.

72. Defendants' actions caused economic, emotional, and reputational harm to Dr. Whitaker.

Count VIII: *Civil Conspiracy*

73. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

74. Defendant Nohelty and Board President Lawrence, acting in concert, engaged in a conspiracy to deprive Dr. Whitaker of her constitutional rights and to retaliate against her for her protected whistleblowing activities.

75. The conspirators held multiple private meetings to discuss and plan ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation.

76. Defendant Nohelty and Board President Lawrence engaged in a conspiracy that went beyond their official capacities and the scope of their employment. They held multiple private meetings outside of official board sessions to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation. These actions were taken to further their personal interests in concealing financial mismanagement, rather than in furtherance of any legitimate district business.

77. In furtherance of this conspiracy, the conspirators:

   a) Fabricated false allegations of misconduct against Dr. Whitaker;

   b) Manipulated the District's disciplinary process to target Dr. Whitaker;

   c) Violated established Board policies and procedures to expedite Dr. Whitaker's suspension and potential termination;

   d) Publicly disseminated false and defamatory information about Dr. Whitaker.

14

78. As a direct result of this conspiracy, Dr. Whitaker has suffered violations of her constitutional rights, damage to her professional reputation, loss of income, and severe emotional distress.

79. The actions of the conspirators were willful, wanton, and malicious, warranting the imposition of punitive damages.

## Count IX: *Monell Claim - 42 U.S.C. § 1983*

80. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

81. Defendant Dolton West School District 148 Board of Education is a local governmental entity operating under the laws of the State of Illinois.

82. The District, through its final policymakers including the Board of Education and Superintendent Nohelty, maintained a policy, practice, or custom of discriminating against African American female administrators and retaliating against employees who raised concerns about fiscal mismanagement.

83. This policy, practice, or custom includes, but is not limited to:

   a) Subjecting African American female administrators to heightened scrutiny and harsher disciplinary measures compared to non-minority, non-male colleagues;

   b) Failing to properly investigate or address concerns raised by African American female administrators about fiscal management;

   c) Retaliating against African American female employees who reported potential misuse of public funds;

   d) Manipulating disciplinary processes to target African American female administrators who spoke out against misconduct;

e) Creating working conditions are so intolerable that a reasonable person in would be compelled to resign or retire.

84. The District's policy, practice, or custom of discrimination and retaliation was the moving force behind the constitutional violations suffered by Dr. Whitaker, including violations of her rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

85. The District's policymakers, including Superintendent Nohelty and the Board of Education, were aware of this discriminatory and retaliatory conduct but failed to take any action to prevent or address it, demonstrating deliberate indifference to the constitutional rights of Dr. Whitaker and other similarly situated employees.

86. As a direct and proximate result of the District's unconstitutional policy, practice, or custom, Dr. Whitaker has suffered damages including loss of income, emotional distress, and damage to her professional reputation.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.  Declare that the acts and conduct of Defendants constitute violations of 42 U.S.C. §§ 1981, 1983, and 1985(3), the Illinois Whistleblower Act, Illinois contract law, and constitute abuse of process and defamation under Illinois law;

B.  Award compensatory damages in an amount to be determined at trial, including but not limited to back pay, front pay, and damages for emotional distress and reputational harm;

C.  Award punitive damages against the individual defendants in an amount to be determined at trial;

16

D. Grant injunctive relief, including reinstatement to her position as Deputy Superintendent and removal of any adverse employment actions from Plaintiff's personnel record;

E. Award pre-judgment and post-judgment interest at the highest lawful rate;

F. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable statutes;

G. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted: **12/05/2024**      **The Yeary Firm, LLC**

By:  /s/      Sheridan T. Yeary
Sheridan Todd Yeary, Esq.; ID#: 201218001
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiff

**Hall-Jackson and Associates, P.C.**

By: /s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq.; ID#: 6312976
180 West Washington Street, Suite 820
Chicago, Illinois 60602
chj@hall-jacksonandassociates.com
312-255-7105
*Attorney for Plaintiff*

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

**The Yeary Firm, LLC**

By: /s/ Sheridan T. Yeary
Sheridan Todd Yeary, Esq.; ID#: 201218001
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiff

**Hall-Jackson and Associates, P.C.**

By: /s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq.; ID#: 6312976
180 West Washington Street, Suite 820
Chicago, Illinois 60602
chj@hall-jacksonandassociates.com
312-255-7105
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DR. SONYA WHITAKER,

Plaintiff,

v.

DR. KEVIN J. NOHELTY, Superintendent
In his official and individual capacity, and
DOLTON WEST SCHOOL DISTRICT 148
BOARD OF EDUCATION,

Defendants.

Case No. 1:24-cv-08308

Hon. Franklin U. Valderrama

*********************************************************

**FIRST AMENDED COMPLAINT - JURY TRIAL DEMANDED**

Plaintiff Dr. Sonya Whitaker, by and through her undersigned counsel, hereby submits this First Amended Complaint against Defendants Dr. Kevin J. Nohelty and Dolton West School District 148 Board of Education, alleging as follows:

## I.    INTRODUCTION

This is a civil action seeking declaratory relief, injunctive relief, back pay, front pay, compensatory damages, punitive damages, and other remedies for violations of Plaintiff's constitutional and statutory rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Illinois Whistleblower Act, for breach of contract under Illinois law, for abuse of process under Illinois law, for defamation under Illinois law, and for civil conspiracy under 42 U.S.C. § 1985(3).

1

## II. PARTIES

1. Plaintiff, Dr. Sonya Whitaker, is an African American female residing in Chicago, Illinois, and was employed as Deputy Superintendent of Schools for Dolton West School District 148 from July 1, 2020, until her suspension without pay on September 5, 2024. She is a member of a protected class under federal law, including 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Dr. Whitaker is the only African American serving in a superintendent or deputy superintendent role in Dolton West School District 148. Dr. Whitaker reports directly to Defendant, Dr. Kevin J. Nohelty, Superintendent of Schools.

2. Defendant, Dr. Kevin Nohelty, is a Caucasian male, and is the Superintendent of Schools and Chief School Business Official for Dolton West School District 148, acting under color of state law within the meaning of 42 U.S.C. § 1983. He is sued in both his official and individual capacities.

3. Defendant, Dolton West School District 148 Board of Education, is a local governmental entity operating under the laws of the State of Illinois and is an employer within the meaning of relevant federal and state statutes.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, and 1985(3).

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they

form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all defendants reside in this district and a substantial part of the events giving rise to this action occurred within this district.

## IV.  FACTUAL ALLEGATIONS

7. On October 22, 2019, Dr. Whitaker entered into a contractual agreement with Dolton West School District 148 to serve as Deputy Superintendent from July 1, 2020, to June 30, 2025. The contract with Dr. Whitaker was later extended to June 30, 2026. Dr. Whitaker is under contract as Deputy Superintendent of Schools as a professional employee.

8. Throughout her tenure, Dr. Whitaker consistently received "Excellent" performance ratings from Defendant Nohelty in all evaluated categories, including instructional leadership, school management, and community relations, for the 2020-2021, 2021-2022, and 2022-2023 school years. No deficiencies or performance related issues were noted by Defendant Nohelty during the performance evaluation periods, and no notice was ever given to Plaintiff Whitaker by Defendant Nohelty concerning performance related issues or suspected violations of Plaintiff Whitaker's contract.

9. In February 2024, the Board of Education approved a retroactive pay increase for Dr. Whitaker upon the recommendation of Defendant Nohelty, further demonstrating her exemplary performance.

10. On May 22, 2024, Dr. Whitaker personally raised concerns with the members of the board of education about her concerns related to fiscal management of the superintendent of schools. She requested the opportunity to speak with the board formally and on the record regarding her concerns. Her request was not granted.

11. On June 6, 2024, Dr. Whitaker again raised the concerns about the financial management of public funds within the District via voicemail to Board President Larry Lawrence, requesting that she needed to speak with the board president about her concerns related to fiscal management and the superintendent of schools. Specifically, Dr. Whitaker discovered that ESSER III funds were allocated to projects without proper documentation or board approval, potentially violating federal grant requirements. The board president indicated that he would grant Dr. Whitaker an audience with him upon his return from travel, however he never met with her nor allowed her to speak with the members of the board of education.

12. It was on the same day, June 6, 2024, that Dr. Whitaker also spoke with the board vice-president regarding her concerns, to no avail.

13. On June 10, 2024, and again on June 24, 2024, Dr. Whitaker raised concerns about the fiscal management of public funds directly with Defendant Nohelty, the superintendent of schools. Specifically, Dr. Whitaker raised concerns related to the reallocation of approximately thirteen million dollars ($13,000,000) of the federal Elementary and Secondary School Emergency Relief Funds (ESSER III).

14. Dr. Whitaker was directed by Defendant Nohelty to plan to make changes to the ESSER III Grant after the funds had already been allocated in the budget line item

statement as presented to the Illinois State Board of Education and to the Dolton West School District 148 board in numerous public board of education meetings.

15. Within two weeks of raising these concerns and refusing to participate in the wrongdoing, Dr. Whitaker was excluded from key meetings and decision-making processes, demonstrating a clear temporal connection between her protected activity and the adverse actions.

16. On July 2, 2024, without prior warning or following proper procedures as required in the District's policies, Defendant Nohelty suspended Dr. Whitaker with pay, without specific notice of the charges and in violation of the Board's policies. The notice indicated that the paid administrative leave was to end on July 15, 2024.

17. On, or about July 2, 2024, Defendant Nohelty tortiously and improperly interfered with Dr. Whitaker's employment contract by engaging members of the superintendent's cabinet to review Dr. Whitaker's previously approved reports to the Board of Education under the guise of finding misstatements or false content. Defendant Nohelty used the false "investigation" as an act of retaliation and to provide fraudulent support for the anticipated termination process, as was established in the testimony of members of the cabinet in the termination hearing of Dr. Whitaker that was held between September 23, 2024, and November 18, 2024.

18. On or about August 7, 2024, Dr. Whitaker spoke with the Deputy Officer for Instructional Education for the Illinois State Board of Education about her concerns, and confirmed those concerns in an email, detailing the content of their phone conversation.

19. On August 19, 2024, Defendant Nohelty issued a pre-suspension notification letter indicating the Board's intent to consider both suspension without pay and termination of Dr. Whitaker. The Defendants failed to comply with Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure by failing to provide proper notice and due process.

20. In the notice, Defendants accused Dr. Whitaker of 20 alleged acts of misconduct, including theft of public property and unlawful harassment.

21. On September 5, 2024, while violating board policies and procedures, Defendants suspended Dr. Whitaker without pay. This action was taken at a specially convened Board meeting where the agenda item regarding Dr. Whitaker was publicly posted to publicly humiliate Dr. Whitaker and causing emotional distress.

22. During the September 5, 2024, meeting Defendant Nohelty, through legal counsel, formally presented the charges against Dr. Whitaker to the full school board, including false accusations of theft, bullying, and falsification of student data. The meeting was held in open session and broadcast via the internet, causing further damage to Dr. Whitaker's reputation.

23. In September 2024, the Illinois State Board of Education issued School District Financial Profile Scores indicating that Dolton West School District 148 received the lowest financial profile of any reporting school district in the State of Illinois based on 2023 financial data, being placed on the financial watch list for the second year in a row.

24. In September 2024, members of the Dolton West School District 148 were made aware of the District's financial status in a report at a public session meeting of the

Board. Dr. Nohelty had not previously informed the Board of the District's financial condition.

25. Upon information and belief, Defendant Nohelty and Board President Lawrence held multiple private meetings to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation and refused to participate in the wrongdoing.

26. Dr. Whitaker, as the only African American in a senior leadership position, was subjected to heightened scrutiny and harsher disciplinary measures compared to her non-minority colleagues. For example, while Dr. Whitaker was suspended without pay for raising concerns about fiscal mismanagement, non-African American administrators who raised similar concerns were not disciplined or subjected to termination proceedings.

27. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

28. As a result of Defendants' actions, Dr. Whitaker has suffered loss of income exceeding $250,000, severe emotional distress, and significant damage to her professional reputation in the education community.

**V.     CLAIMS FOR RELIEF**

Count I: *Violation of 42 U.S.C. §1981*

29. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

30. Dr. Whitaker is an African American woman and is a member of a protected class under federal law.

31. Defendants' malicious and unwarranted actions have interfered with Plaintiff's contractual rights and constitute racial discrimination, in violation of 42 U.S.C. § 1981.

32. Defendant demonstrated similar malicious and unwarranted actions directed toward the African American female predecessor to Dr. Whitaker, Dr. Patricia Moore in 2019.

33. Defendant Nohelty''s demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker to her African American female curriculum coordinator, Dornetta Walker. Ms. Walker was a direct report to Dr. Whitaker.

34. Defendant Nohelty's demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker toward Dr. Lisa Davis-Smith, former director of state and federal grants. Dr. Davis left the district's employ in 2020.

35. Defendant's malicious and unwarranted actions have caused economic, emotional, and reputational harm to Dr. Whitaker.

36. The actions taken against Dr. Whitaker, including her suspension without pay and the initiation of termination proceedings, were motivated by racial animus and constituted intentional discrimination. Similarly situated non-African American employees, such as John Donermeyer, Melanie Llanes, and Nancy Perkins were

not subjected to the same adverse actions or level of scrutiny for actual performance deficiencies as Dr. Whitaker.

Count II: *First Amendment Retaliation - 42 U.S.C. §1983*

37. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

38. Defendants, acting under color of state law, violated Plaintiff's First Amendment rights by retaliating against her for protected speech on matters of public concern, namely the misuse of public funds.

39. Dr. Whitaker's speech regarding misallocation of federal funds is a matter of public concern as it directly affects the educational resources available to students and the proper use of taxpayer money.

40. Dr. Whitaker's reporting of potential misuse of ESSER III funds went beyond her official duties as Deputy Superintendent. She spoke as a private citizen on a matter of public concern when she raised these issues directly with the Board President and members of the Board of Education, which was outside her normal chain of command and not part of her regular job responsibilities.

41. Dr. Whitaker's interest in speaking out on this matter of public concern outweighs any governmental interest in efficiency.

42. There is a direct causal link between Dr. Whitaker's protected speech and the adverse employment actions taken against her, as evidenced by the close temporal proximity between her reports of misconduct and her suspension.

43. Defendants' actions caused emotional and reputational harm through the improper use of disciplinary action to chill Dr. Whitaker's constitutional right to speech and to inflict economic, reputational, and emotional harm on her.

### Count III: *Equal Protection Violation - 42 U.S.C. §1983*

44. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

45. Defendants, acting under color of state law, violated Plaintiff's Fourteenth Amendment right to equal protection by discriminating against her on the basis of race.

46. Dr. Whitaker was treated differently from similarly situated non-African American employees with respect to disciplinary actions, scrutiny of her work, and the application of district policies and procedures.

47. The disparate treatment of Dr. Whitaker was motivated by racial animus and lacked any rational basis.

48. As a result of this discriminatory treatment, Dr. Whitaker has suffered economic losses, emotional distress, and damage to her professional reputation.

### Count IV: *Violation of Illinois Whistleblower Act*

49. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50. The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., prohibits retaliation against employees who disclose information about suspected violations of state or federal laws, rules, or regulations.

51. Dr. Whitaker's reporting of potential misuse of federal funds to the Deputy Officer for Instructional Education for the Illinois State Board of Education falls squarely within the protected activities under the Illinois Whistleblower Act, as it involves disclosure of suspected violations of federal regulations governing grant fund usage to a third party.

10

52. Defendants' retaliatory actions against Dr. Whitaker for raising concerns about the financial management of public funds and refusing to participate in the wrongdoing violated Sections 15(a), 15(b), and 20.1 of the Illinois Whistleblower Act.

53. Defendants' retaliatory actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

*Count V: Breach of Contract*

54. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

55. Dr. Whitaker had a valid employment contract with Dolton West School District 148, which Defendants breached by suspending her without pay and attempting to terminate her employment without cause or proper procedures as outlined in the contract and District policies.

56. The District breached Dr. Whitaker's employment contract by suspending her without pay on September 5, 2024, without following the proper procedures outlined in Section 11(d) of her contract, which requires that, "[T]ermination of the Employee's employment shall be subject to the terms and procedures of the Illinois School Code."

57. Additionally, the District violated Board Policy 5:240 by failing to adhere to the District's policy when Defendant Nohelty failed to "meet with the employee to present the allegations and give the employee an opportunity to refute the charges" prior to her suspension.

58. The Board's adverse action to suspend Dr. Whitaker, first with pay then without pay, while knowingly and intentionally disregarding the board's policies concerning

such actions, establish the malicious and reckless harm done to Dr. Whitaker economically, emotionally, and to her reputation.

59. As a direct result of this breach, Dr. Whitaker has suffered economic losses, including lost wages and benefits.

### Count VI: *Abuse of Process*

60. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

61. Defendants willfully misused the District's disciplinary process against Dr. Whitaker for an improper and ulterior purpose, namely to retaliate against her for her protected whistleblowing activity and to discriminate against her on the basis of race.

62. Defendants' actions were not proper in the regular prosecution of the proceedings, as they were motivated by retaliatory intent rather than legitimate disciplinary concerns.

63. Defendants took specific actions in furtherance of this abuse, including initiating suspension and termination proceedings without proper cause or following established procedures.

64. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

65. As a result of Defendants' abuse of process, Dr. Whitaker has suffered damage to her professional reputation, loss of income, and emotional distress.

Count VII: *Defamation*

66. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

67. Defendants knowingly made false and defamatory statements about Dr. Whitaker, including accusations of theft, bullying, and falsification of student data.

68. These statements were published to third parties during the September 5, 2024, board meeting, which was broadcast via the internet and widely disseminated.

69. The defamatory statements made by Defendants went beyond the scope of any privileged communication in administrative proceedings. Defendants maliciously publicized false accusations of theft and misconduct in open board meetings and through internet broadcasts, causing harm to Dr. Whitaker's reputation beyond what was necessary for any legitimate disciplinary purpose.

70. The false allegations have damaged Dr. Whitaker's reputation, causing her to suffer emotional distress and financial harm.

71. Defendants acted with actual malice, knowing the statements were false or with reckless disregard for their truth.

72. Defendants' actions caused economic, emotional, and reputational harm to Dr. Whitaker.

## Count VIII: Civil Conspiracy

73. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

74. Defendant Nohelty and Board President Lawrence, acting in concert, engaged in a conspiracy to deprive Dr. Whitaker of her constitutional rights and to retaliate against her for her protected whistleblowing activities.

75. The conspirators held multiple private meetings to discuss and plan ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation.

76. Defendant Nohelty and Board President Lawrence engaged in a conspiracy that went beyond their official capacities and the scope of their employment. They held multiple private meetings outside of official board sessions to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation. These actions were taken to further their personal interests in concealing financial mismanagement, rather than in furtherance of any legitimate district business.

77. In furtherance of this conspiracy, the conspirators:

   a) Fabricated false allegations of misconduct against Dr. Whitaker;

   b) Manipulated the District's disciplinary process to target Dr. Whitaker;

   c) Violated established Board policies and procedures to expedite Dr. Whitaker's suspension and potential termination;

   d) Publicly disseminated false and defamatory information about Dr. Whitaker.

78. As a direct result of this conspiracy, Dr. Whitaker has suffered violations of her constitutional rights, damage to her professional reputation, loss of income, and severe emotional distress.

79. The actions of the conspirators were willful, wanton, and malicious, warranting the imposition of punitive damages.

### Count IX: *Monell Claim - 42 U.S.C. § 1983*

80. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

81. Defendant Dolton West School District 148 Board of Education is a local governmental entity operating under the laws of the State of Illinois.

82. The District, through its final policymakers including the Board of Education and Superintendent Nohelty, maintained a policy, practice, or custom of discriminating against African American female administrators and retaliating against employees who raised concerns about fiscal mismanagement.

83. This policy, practice, or custom includes, but is not limited to:

   a) Subjecting African American female administrators to heightened scrutiny and harsher disciplinary measures compared to non-minority, non-male colleagues;

   b) Failing to properly investigate or address concerns raised by African American female administrators about fiscal management;

   c) Retaliating against African American female employees who reported potential misuse of public funds;

   d) Manipulating disciplinary processes to target African American female administrators who spoke out against misconduct;

e) Creating working conditions are so intolerable that a reasonable person in would be compelled to resign or retire.

84. The District's policy, practice, or custom of discrimination and retaliation was the moving force behind the constitutional violations suffered by Dr. Whitaker, including violations of her rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

85. The District's policymakers, including Superintendent Nohelty and the Board of Education, were aware of this discriminatory and retaliatory conduct but failed to take any action to prevent or address it, demonstrating deliberate indifference to the constitutional rights of Dr. Whitaker and other similarly situated employees.

86. As a direct and proximate result of the District's unconstitutional policy, practice, or custom, Dr. Whitaker has suffered damages including loss of income, emotional distress, and damage to her professional reputation.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A. Declare that the acts and conduct of Defendants constitute violations of 42 U.S.C. §§ 1981, 1983, and 1985(3), the Illinois Whistleblower Act, Illinois contract law, and constitute abuse of process and defamation under Illinois law;

B. Award compensatory damages in an amount to be determined at trial, including but not limited to back pay, front pay, and damages for emotional distress and reputational harm;

C. Award punitive damages against the individual defendants in an amount to be determined at trial;

16

D. Grant injunctive relief, including reinstatement to her position as Deputy Superintendent and removal of any adverse employment actions from Plaintiff's personnel record;

E. Award pre-judgment and post-judgment interest at the highest lawful rate;

F. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable statutes;

G. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted; **12/05/2024**        **The Yeary Firm, LLC**

By: /s/        Sheridan T. Yeary
Sheridan Todd Yeary, Esq.; ID#: 201218001
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiff

**Hall-Jackson and Associates, P.C.**

By: /s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq.; ID#: 6312976
180 West Washington Street, Suite 820
Chicago, Illinois 60602
chj@hall-jacksonandassociates.com
312-255-7105
*Attorney for Plaintiff*

17

### JURY TRIAL DEMAND

Plaintiff, demands a jury trial on all issues so triable.

**The Yeary Firm, LLC**

By: /s/ Sheridan T. Yeary
Sheridan Todd Yeary, Esq.; ID#: 201218001
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiff

**Hall-Jackson and Associates, P.C.**

By: /s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq.; ID#: 6312976
180 West Washington Street, Suite 820
Chicago, Illinois 60602
chj@hall-jacksonandassociates.com
312-255-7104
*Attorney for Plaintiff*