*Sonya Whitaker v. Kevin J. Nohelty, et al.*
Court No.: 25-cv-06055

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. SONYA WHITAKER, | |
| Plaintiff, | |
| v. | Case No.: 24-cv-08308 |
| | Assigned Judge: Franklin U. Valderrama |
| DR. KEVIN J. NOHELTY, Superintendent, in his official and individual capacity, and DOLTON WEST SCHOOL DISTRICT 148 BOARD OF EDUCATION, | Related Case No.: 25-cv-06055 |
| | Assigned Judge: Mary M. Rowland |
| | (Circuit Court of Cook County, Illinois, Civil Action No. 2025 L 005724) |
| Defendants. | |

**DEFENDANTS' MOTION TO CONSOLIDATE AND/OR REASSIGN RELATED CASE**

The Defendants, DR. KEVIN J. NOHELTY and the DOLTON WEST SCHOOL DISTRICT 148 BOARD OF EDUCATION, (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 42[1] and Local Rule ("LR") 40.4, hereby respectfully move this honorable Court to reassign or consolidate the Related Matter (Case No. 25-cv-06055) pending before the Honorable Mary M. Rowland with the is matter (Case No. 24-cv-08308) currently pending before this Court. Counsel for Defendants conferred with counsel for Plaintiff regarding this Motion. Counsel for Plaintiff indicated Plaintiff opposes this Motion. In support of this Motion, the Defendants respectfully state the following:

### I.       FACTS

---

[1] All "Rule" references are to the Federal Rules of Civil Procedure, unless otherwise noted.

1

1. The instant case was originally filed by Plaintiff in this Court on September 12, 2024. For ease of reference, a copy of the amended complaint in this matter (Dkt. 20) is attached hereto as **Exhibit A**.

2. After this matter had been filed and an initial round of written discovery completed, Plaintiff filed an additional matter in the Illinois Circuit Court, Cook County, Law Division, on April 30, 2025. The Defendants removed that matter from the state court to this Court on May 30, 2025 (the "Related Matter"). (Dkt. 1). The Related Matter is currently proceeding before the Honorable Mary M. Rowland bearing case number 25-cv-06055. For ease of reference, a copy of the complaint in the Related Matter is attached hereto as **Exhibit B**.

3. If one compares the amended complaint in this matter (Dkt. 20 / **Exh. A**), with the complaint in the Related Matter (Dkt. 1 / **Exh. B**), one can see that Plaintiff has brought two suits against the exact same defendants, based on the exact same conduct, and alleging the same factual allegations and causes of action.

4. The Defendants noted in their Notice of Removal of the Related Matter that the Defendants intended to consolidate Plaintiff's two matters upon removal. (Dkt. 1, at ¶ 15).

5. Plaintiff asserts similar, if not identical, causes of action and questions of law in both matters. In fact, Plaintiff asserts some of the exact same causes of action in the Related Matter as in this case. In this case, Plaintiff asserts causes of action for violation of the Illinois Whistleblower Act (Count IV), breach of contract (Count V), abuse of process (Count VI), and interference with contract (Count I). (**Exh. A** / Dkt. 20, at 8, 10-12). In the Related Matter, Plaintiff asserts causes of action for violation of the Illinois Whistleblower Act (Count I), breach of contract (Count II), violation of due process (Count III), and interference with contract (Count V). (**Exh. B**, at 9-11, 14).

6.      Plaintiff specifically alleges a cause of action for First Amendment retaliation in this matter, which necessarily must be decided before the other claims may be determined. *Fowler v. Evansville Convention & Visitors Bureau*, 2010 U.S. Dist. LEXIS 114429, **12-13, (S.D.Ind.). (**Exh. A**, at 9, Count II).

7.      In addition to the common questions of law, the allegations maintained in both of the complaints involve identical questions of fact arising out of the same occurrences of alleged mistreatment of the Plaintiff. (*Compare*, **Exh. A**, ¶¶ 7-28, *with* **Exh. B**, ¶¶ 7-28). Generally, Plaintiff alleges in both actions that she was retaliated against with unwarranted discipline after exercising her First Amendment rights. (**Exh. A**, ¶¶ 7-28; **Exh. B**, ¶¶ 7-28).

8.      Specifically, both of the complaints maintain the following identical facts. Nearly all factual allegations are identical as between the amended complaint in this matter and the complaint in the Related Matter, particularly Paragraphs 7 through 28. (Not all identical facts are presented here for purposes of brevity. However, if one compares the two complaints, one can see that all facts are nearly identical as between the two pleadings, Paragraphs 7 through 28 are nearly identical):

(a)      "On October 22, 2019, Dr. Whitaker entered into a contractual agreement with Dolton West School District 148 to serve as Deputy Superintendent from July 1, 2020, to June 30, 2025. The contract with Dr. Whitaker was later extended to June 30, 2026. Dr. Whitaker is under contract as Deputy Superintendent of Schools as a professional employee." (**Exh. A**, ¶ 7; **Exh. B**, ¶ 7).

(b)      "Throughout her tenure, Dr. Whitaker consistently received 'Excellent' performance ratings from Defendant Nohelty in all evaluated categories …" (**Exh. A**, ¶ 8; **Exh. B**, ¶ 8).

(c)      "On May 22, 2024, Dr. Whitaker personally raised concerns with the members of the board of education about her concerns related to fiscal management of the superintendent of schools. She requested the opportunity to speak with the board formally and on the record regarding her concerns. Her request was not granted." (**Exh. A**, ¶ 10; **Exh. B**, ¶ 10).

(d)     "On June 6, 2024, Dr. Whitaker again raised the concerns about the financial management of public funds within the District via voicemail to Board President Larry Lawrence, requesting that she needed to speak with the board president about her concerns related to fiscal management and the superintendent of schools. …" (**Exh. A**, ¶ 11; **Exh. B**, ¶ 11).

(e)     "On June 10, 2024, and again on June 24, 2024, Dr. Whitaker raised concerns about the fiscal management of public funds directly with Defendant Nohelty, the superintendent of schools. …" (**Exh. A**, ¶ 13; **Exh. B**, ¶ 13).

(f)     "Within two weeks of raising these concerns and refusing to participate in the wrongdoing, Dr. Whitaker was excluded from key meetings and decision-making processes, demonstrating a clear temporal connection between her protected activity and the adverse actions." (**Exh. A**, ¶ 15; **Exh. B**, ¶ 15).

(g)     "On July 2, 2024, without prior warning or following proper procedures as required in the District's policies, Defendant Nohelty suspended Dr. Whitaker with pay, without specific notice of the charges and in violation of the Board's policies. The notice indicated that the paid administrative leave was to end on July 15, 2024." (**Exh. A**, ¶ 16; **Exh. B**, ¶ 16).

(h)     "On August 19, 2024, Defendant Nohelty issued a pre-suspension notification letter indicating the Board's intent to consider both suspension without pay and termination of Dr. Whitaker. The Defendants failed to comply with Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure by failing to provide proper notice and due process." (**Exh. A**, ¶ 19; **Exh. B**, ¶ 19).

(i)     "Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. …" (**Exh. A**, ¶ 27; **Exh. B**, ¶ 28).

9.     Thus, pursuant to LR 40.4(b), reassignment / consolidation is appropriate because the two cases involve the same issues of fact and law, and both cases grow out of the same transaction or occurrence.

10.     This Motion is filed in this matter, with a notice of filing being concurrently filed in the Related Matter.

11.     Counsel for Defendants conferred with counsel for Plaintiff regarding this Motion and the request to consolidate on June 11 and 13, 2025. Counsel for Plaintiff indicated that Plaintiff opposes this Motion.

12.     It should be noted that Plaintiff filed a motion to remand the Related Matter in the Related Matter on June 13, 2025. (Dkt. 6).

## LEGAL STANDARD

Under Rule 42(a), actions may be consolidated if they involve common questions of law and fact. Whether to consolidate cases is within the sound discretion of the trial court. *Pactiv Corp. v. Multisorb Techs., Inc.*, 2011 U.S. Dist. LEXIS 15991, at *1 (N.D.Ill.); *see also, King v. Gen. Elec. Co.,* 960 F.2d 617, 626 (7th Cir. 1992). *See also, Mutual Life v. Hillmon,* 145 U.S. 285, 292, (1892) (consolidating cases "of like nature and relative to the same question" is within trial court's discretion).

Cases are "related" for reassignment purposes when: "(1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are the same." LR 40.4(a).

"A case may be assigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria is met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding." LR 40.4(b).

## ARGUMENT

The two cases at issue here are related because they involve similar, if not identical, issues of law and fact. Plaintiff has brought two suits against the exact same defendants, based on the exact same conduct, and alleging the same factual allegations and causes of action. (*Compare*,

**Exh. A**, *with* **Exh. B**). All of Plaintiff's claims arise out of Plaintiff's discipline and ultimate termination with the District. (**Exh. A**; **Exh. B**). The alleged facts giving rise to Plaintiff's claims in both matters are identical, as outlined above. (**Exh. A**, ¶¶ 7, 8, 10, 11, 13, 15, 16, 19, 27; **Exh. B**, ¶¶ 7, 8, 10, 11, 13, 15, 16, 19, 28). And, in fact, Plaintiff asserts identical causes of action in this matter and the Related Matter. In this matter, Plaintiff asserts causes of action for violation of the Illinois Whistleblower Act (Count IV), breach of contract (Count V), abuse of process (Count VI), and interference with contract (Count I). (**Exh. A** / Dkt. 20, at 8, 10-12). In the Related Matter, Plaintiff asserts causes of action for violation of the Illinois Whistleblower Act (Count I), breach of contract (Count II), violation of due process (Count III), and interference with contract (Count V). (**Exh. B**, at 9-11, 14). Accordingly, as the issues and claims raised in the Related Matter are of a like nature and concern the exact same issues of fact and law, the two matters satisfy the requirements of both Rule 42(a) and LR 40.4(a) for consolidation and reassignment.

Further, the two matters satisfy the requirements of LR 40.4(b). Both matters are pending in this Court; this matter is currently before The Honorable Franklin U. Valderrama, and the Related Matter is currently before the Honorable Mary M. Rowland. LR 40.4(b)(1). Consolidating thee two matters for "the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort." LR 40.4(b)(2). Because the two matters arise out of the same occurrence or conduct (Plaintiff's discipline and termination from the District), consolidation "is likely to result in a substantial saving of judicial time and effort," as the same discovery, motion practice, and even trial, is likely to occur in both matters. *Ibid*. The instant matter "has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially." LR 40.4(b)(3). In this matter, Plaintiff filed her Amended Complaint on December 5, 2024. (Dkt. 20). The Parties have engaged in an initial round

of written discovery; depositions have been stayed pending motion to dismiss practice. (Dkt. 19). Thus, this matter is in the early stages of pleadings and discovery. Plaintiff filed her complaint in the Related Matter on April 30, 2025, which the Defendants immediately removed to this Court. (**Exh. B**). The Defendants have not yet filed a responsive pleading to the complaint in the Related Matter, and no discovery has occurred yet in the Related Matter. The instant matter and the Related Matter "ha[ve] not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially." LR 40.4(b)(3). Finally, "the cases are susceptible of disposition in a single proceeding," given that the two matters arise from the same core set of facts and the two matters involve the same issues of fact and law. (**Exh. A**; **Exh. B**).

The handling of both matters by this Court (The Honorable Franklin U. Valderrama) will likely result in substantial savings of judicial time and effort as all of case management conferences, discovery schedules and pre-trial matters can be heard and resolved before this single Court rather than duplicating efforts across two separate courtrooms. LR 40.4(b)(2). The Related Matter has not progressed such that this matter will be delayed. LR 40.4(b)(3).

Counsel for Defendants conferred with counsel for Plaintiff regarding this Motion on June 11 and 13, 2025. Counsel for Plaintiff indicated that Plaintiff opposes the Motion.

<u>Conclusion</u>

WHEREFORE, for the reasons stated above, the Defendants respectfully ask that this Court enter an order, pursuant to Federal Rule of Civil Procedure 42(a) and Local Rule 40.4, reassigning the Related Matter (Case No. 25-cv-06055) (the higher numbered / newer matter) to this Court for consolidation with the instant matter (Case No. 24-cv-08308) (the lower numbered / older matter).

Respectfully submitted,

DOLTON WEST SCHOOL
DISTRICT 148 and DR. KEVIN J.
NOHELTY

By:    */s/ Kathleen M. Kunkle*
       One of Their Attorneys

Kathleen M. Kunkle / ARDC # 6281796
kkunkle@ancelglink.com
ANCEL GLINK, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
(312) 782-7606
(312) 782-0943/ Fax

*Dr. Sonya Whitaker v. Dr. Kevin J. Nohelty, Superintendent, in his official and individual capacity, and Dolton West School District 148 Board of Education*
Court No.: 24-cv-08308

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DR. SONYA WHITAKER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No. 1:24-cv-08308 |
| v. | * | |
| | * | Hon. Franklin U. Valderrama |
| DR. KEVIN J. NOHELTY, Superintendent | * | |
| In his official and individual capacity, and | * | |
| DOLTON WEST SCHOOL DISTRICT 148 | * | |
| BOARD OF EDUCATION, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FIRST AMENDED COMPLAINT - JURY TRIAL DEMANDED

Plaintiff Dr. Sonya Whitaker, by and through her undersigned counsel, hereby submits

this First Amended Complaint against Defendants Dr. Kevin J. Nohelty and Dolton West

School District 148 Board of Education, alleging as follows:

### I.      INTRODUCTION

This is a civil action seeking declaratory relief, injunctive relief, back pay, front pay,

compensatory damages, punitive damages, and other remedies for violations of Plaintiff's

constitutional and statutory rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Illinois

Whistleblower Act, for breach of contract under Illinois law, for abuse of process under

Illinois law, for defamation under Illinois law, and for civil conspiracy under 42 U.S.C. §

1985(3).

## II.     PARTIES

1.   Plaintiff, Dr. Sonya Whitaker, is an African American female residing in Chicago, Illinois, and was employed as Deputy Superintendent of Schools for Dolton West School District 148 from July 1, 2020, until her suspension without pay on September 5, 2024. She is a member of a protected class under federal law, including 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Dr. Whitaker is the only African American serving in a superintendent or deputy superintendent role in Dolton West School District 148. Dr. Whitaker reports directly to Defendant, Dr. Kevin J. Nohelty, Superintendent of Schools.

2.   Defendant, Dr. Kevin Nohelty, is a Caucasian male, and is the Superintendent of Schools and Chief School Business Official for Dolton West School District 148, acting under color of state law within the meaning of 42 U.S.C. § 1983. He is sued in both his official and individual capacities.

3.   Defendant, Dolton West School District 148 Board of Education, is a local governmental entity operating under the laws of the State of Illinois and is an employer within the meaning of relevant federal and state statutes.

## III.     JURISDICTION AND VENUE

4.   This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, and 1985(3).

5.   This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they

form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all defendants reside in this district and a substantial part of the events giving rise to this action occurred within this district.

## IV.    FACTUAL ALLEGATIONS

7. On October 22, 2019, Dr. Whitaker entered into a contractual agreement with Dolton West School District 148 to serve as Deputy Superintendent from July 1, 2020, to June 30, 2025. The contract with Dr. Whitaker was later extended to June 30, 2026. Dr. Whitaker is under contract as Deputy Superintendent of Schools as a professional employee.

8. Throughout her tenure, Dr. Whitaker consistently received "Excellent" performance ratings from Defendant Nohelty in all evaluated categories, including instructional leadership, school management, and community relations, for the 2020-2021, 2021-2022, and 2022-2023 school years. No deficiencies or performance related issues were noted by Defendant Nohelty during the performance evaluation periods, and no notice was ever given to Plaintiff Whitaker by Defendant Nohelty concerning performance related issues or suspected violations of Plaintiff Whitaker's contract.

9. In February 2024, the Board of Education approved a retroactive pay increase for Dr. Whitaker upon the recommendation of Defendant Nohelty, further demonstrating her exemplary performance.

10. On May 22, 2024, Dr. Whitaker personally raised concerns with the members of the board of education about her concerns related to fiscal management of the superintendent of schools. She requested the opportunity to speak with the board formally and on the record regarding her concerns. Her request was not granted.

11. On June 6, 2024, Dr. Whitaker again raised the concerns about the financial management of public funds within the District via voicemail to Board President Larry Lawrence, requesting that she needed to speak with the board president about her concerns related to fiscal management and the superintendent of schools. Specifically, Dr. Whitaker discovered that ESSER III funds were allocated to projects without proper documentation or board approval, potentially violating federal grant requirements. The board president indicated that he would grant Dr. Whitaker an audience with him upon his return from travel, however he never met with her nor allowed her to speak with the members of the board of education.

12. It was on the same day, June 6, 2024, that Dr. Whitaker also spoke with the board vice-president regarding her concerns, to no avail.

13. On June 10, 2024, and again on June 24, 2024, Dr. Whitaker raised concerns about the fiscal management of public funds directly with Defendant Nohelty, the superintendent of schools. Specifically, Dr. Whitaker raised concerns related to the reallocation of approximately thirteen million dollars ($13,000,000) of the federal Elementary and Secondary School Emergency Relief Funds (ESSER III).

14. Dr. Whitaker was directed by Defendant Nohelty to plan to make changes to the ESSER III Grant after the funds had already been allocated in the budget line item

statement as presented to the Illinois State Board of Education and to the Dolton West School District 148 board in numerous public board of education meetings.

15. Within two weeks of raising these concerns and refusing to participate in the wrongdoing, Dr. Whitaker was excluded from key meetings and decision-making processes, demonstrating a clear temporal connection between her protected activity and the adverse actions.

16. On July 2, 2024, without prior warning or following proper procedures as required in the District's policies, Defendant Nohelty suspended Dr. Whitaker with pay, without specific notice of the charges and in violation of the Board's policies. The notice indicated that the paid administrative leave was to end on July 15, 2024.

17. On, or about July 2, 2024, Defendant Nohelty tortiously and improperly interfered with Dr. Whitaker's employment contract by engaging members of the superintendent's cabinet to review Dr. Whitaker's previously approved reports to the Board of Education under the guise of finding misstatements or false content. Defendant Nohelty used the false "investigation" as an act of retaliation and to provide fraudulent support for the anticipated termination process, as was established in the testimony of members of the cabinet in the termination hearing of Dr. Whitaker that was held between September 23, 2024, and November 18, 2024.

18. On or about August 7, 2024, Dr. Whitaker spoke with the Deputy Officer for Instructional Education for the Illinois State Board of Education about her concerns, and confirmed those concerns in an email, detailing the content of their phone conversation.

5

19. On August 19, 2024, Defendant Nohelty issued a pre-suspension notification letter indicating the Board's intent to consider both suspension without pay and termination of Dr. Whitaker. The Defendants failed to comply with Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure by failing to provide proper notice and due process.

20. In the notice, Defendants accused Dr. Whitaker of 20 alleged acts of misconduct, including theft of public property and unlawful harassment.

21. On September 5, 2024, while violating board policies and procedures, Defendants suspended Dr. Whitaker without pay. This action was taken at a specially convened Board meeting where the agenda item regarding Dr. Whitaker was publicly posted to publicly humiliate Dr. Whitaker and causing emotional distress.

22. During the September 5, 2024, meeting Defendant Nohelty, through legal counsel, formally presented the charges against Dr. Whitaker to the full school board, including false accusations of theft, bullying, and falsification of student data. The meeting was held in open session and broadcast via the internet, causing further damage to Dr. Whitaker's reputation.

23. In September 2024, the Illinois State Board of Education issued School District Financial Profile Scores indicating that Dolton West School District 148 received the lowest financial profile of any reporting school district in the State of Illinois based on 2023 financial data, being placed on the financial watch list for the second year in a row.

24. In September 2024, members of the Dolton West School District 148 were made aware of the District's financial status in a report at a public session meeting of the

6

Board. Dr. Nohelty had not previously informed the Board of the District's financial condition.

25. Upon information and belief, Defendant Nohelty and Board President Lawrence held multiple private meetings to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation and refused to participate in the wrongdoing.

26. Dr. Whitaker, as the only African American in a senior leadership position, was subjected to heightened scrutiny and harsher disciplinary measures compared to her non-minority colleagues. For example, while Dr. Whitaker was suspended without pay for raising concerns about fiscal mismanagement, non-African American administrators who raised similar concerns were not disciplined or subjected to termination proceedings.

27. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

28. As a result of Defendants' actions, Dr. Whitaker has suffered loss of income exceeding $250,000, severe emotional distress, and significant damage to her professional reputation in the education community.

## V.    CLAIMS FOR RELIEF

### Count I: *Violation of 42 U.S.C. §1981*

29. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

30. Dr. Whitaker is an African American woman and is a member of a protected class under federal law.

31. Defendants' malicious and unwarranted actions have interfered with Plaintiff's contractual rights and constitute racial discrimination, in violation of 42 U.S.C. § 1981.

32. Defendant demonstrated similar malicious and unwarranted actions directed toward the African American female predecessor to Dr. Whitaker, Dr. Patricia Moore in 2019.

33. Defendant Nohelty''s demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker to her African American female curriculum coordinator, Dornetta Walker. Ms. Walker was a direct report to Dr. Whitaker.

34. Defendant Nohelty's demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker toward Dr. Lisa Davis-Smith, former director of state and federal grants. Dr. Davis left the district's employ in 2020.

35. Defendant's malicious and unwarranted actions have caused economic, emotional, and reputational harm to Dr. Whitaker.

36. The actions taken against Dr. Whitaker, including her suspension without pay and the initiation of termination proceedings, were motivated by racial animus and constituted intentional discrimination. Similarly situated non-African American employees, such as John Donermeyer, Melanie Llanes, and Nancy Perkins were

8

not subjected to the same adverse actions or level of scrutiny for actual performance deficiencies as Dr. Whitaker.

Count II: *First Amendment Retaliation - 42 U.S.C. §1983*

37. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

38. Defendants, acting under color of state law, violated Plaintiff's First Amendment rights by retaliating against her for protected speech on matters of public concern, namely the misuse of public funds.

39. Dr. Whitaker's speech regarding misallocation of federal funds is a matter of public concern as it directly affects the educational resources available to students and the proper use of taxpayer money.

40. Dr. Whitaker's reporting of potential misuse of ESSER III funds went beyond her official duties as Deputy Superintendent. She spoke as a private citizen on a matter of public concern when she raised these issues directly with the Board President and members of the Board of Education, which was outside her normal chain of command and not part of her regular job responsibilities.

41. Dr. Whitaker's interest in speaking out on this matter of public concern outweighs any governmental interest in efficiency.

42. There is a direct causal link between Dr. Whitaker's protected speech and the adverse employment actions taken against her, as evidenced by the close temporal proximity between her reports of misconduct and her suspension.

43. Defendants' actions caused emotional and reputational harm through the improper use of disciplinary action to chill Dr. Whitaker's constitutional right to speech and to inflict economic, reputational, and emotional harm on her.

9

Count III: *Equal Protection Violation - 42 U.S.C. §1983*

44. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

45. Defendants, acting under color of state law, violated Plaintiff's Fourteenth Amendment right to equal protection by discriminating against her on the basis of race.

46. Dr. Whitaker was treated differently from similarly situated non-African American employees with respect to disciplinary actions, scrutiny of her work, and the application of district policies and procedures.

47. The disparate treatment of Dr. Whitaker was motivated by racial animus and lacked any rational basis.

48. As a result of this discriminatory treatment, Dr. Whitaker has suffered economic losses, emotional distress, and damage to her professional reputation.

Count IV: *Violation of Illinois Whistleblower Act*

49. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50. The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., prohibits retaliation against employees who disclose information about suspected violations of state or federal laws, rules, or regulations.

51. Dr. Whitaker's reporting of potential misuse of federal funds to the Deputy Officer for Instructional Education for the Illinois State Board of Education falls squarely within the protected activities under the Illinois Whistleblower Act, as it involves disclosure of suspected violations of federal regulations governing grant fund usage to a third party.

10

52. Defendants' retaliatory actions against Dr. Whitaker for raising concerns about the financial management of public funds and refusing to participate in the wrongdoing violated Sections 15(a), 15(b), and 20.1 of the Illinois Whistleblower Act.

53. Defendants' retaliatory actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

## Count V: *Breach of Contract*

54. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

55. Dr. Whitaker had a valid employment contract with Dolton West School District 148, which Defendants breached by suspending her without pay and attempting to terminate her employment without cause or proper procedures as outlined in the contract and District policies.

56. The District breached Dr. Whitaker's employment contract by suspending her without pay on September 5, 2024, without following the proper procedures outlined in Section 11(d) of her contract, which requires that, "[T]ermination of the Employee's employment shall be subject to the terms and procedures of the Illinois School Code."

57. Additionally, the District violated Board Policy 5:240 by failing to adhere to the District's policy when Defendant Nohelty failed to "meet with the employee to present the allegations and give the employee an opportunity to refute the charges" prior to her suspension.

58. The Board's adverse action to suspend Dr. Whitaker, first with pay then without pay, while knowingly and intentionally disregarding the board's policies concerning

such actions, establish the malicious and reckless harm done to Dr. Whitaker economically, emotionally, and to her reputation.

59. As a direct result of this breach, Dr. Whitaker has suffered economic losses, including lost wages and benefits.

## Count VI: *Abuse of Process*

60. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

61. Defendants willfully misused the District's disciplinary process against Dr. Whitaker for an improper and ulterior purpose, namely to retaliate against her for her protected whistleblowing activity and to discriminate against her on the basis of race.

62. Defendants' actions were not proper in the regular prosecution of the proceedings, as they were motivated by retaliatory intent rather than legitimate disciplinary concerns.

63. Defendants took specific actions in furtherance of this abuse, including initiating suspension and termination proceedings without proper cause or following established procedures.

64. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

65. As a result of Defendants' abuse of process, Dr. Whitaker has suffered damage to her professional reputation, loss of income, and emotional distress.

Count VII: <em>Defamation</em>

66. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

67. Defendants knowingly made false and defamatory statements about Dr. Whitaker, including accusations of theft, bullying, and falsification of student data.

68. These statements were published to third parties during the September 5, 2024, board meeting, which was broadcast via the internet and widely disseminated.

69. The defamatory statements made by Defendants went beyond the scope of any privileged communication in administrative proceedings. Defendants maliciously publicized false accusations of theft and misconduct in open board meetings and through internet broadcasts, causing harm to Dr. Whitaker's reputation beyond what was necessary for any legitimate disciplinary purpose.

70. The false allegations have damaged Dr. Whitaker's reputation, causing her to suffer emotional distress and financial harm.

71. Defendants acted with actual malice, knowing the statements were false or with reckless disregard for their truth.

72. Defendants' actions caused economic, emotional, and reputational harm to Dr. Whitaker.

## Count VIII: *Civil Conspiracy*

73. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

74. Defendant Nohelty and Board President Lawrence, acting in concert, engaged in a conspiracy to deprive Dr. Whitaker of her constitutional rights and to retaliate against her for her protected whistleblowing activities.

75. The conspirators held multiple private meetings to discuss and plan ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation.

76. Defendant Nohelty and Board President Lawrence engaged in a conspiracy that went beyond their official capacities and the scope of their employment. They held multiple private meetings outside of official board sessions to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation. These actions were taken to further their personal interests in concealing financial mismanagement, rather than in furtherance of any legitimate district business.

77. In furtherance of this conspiracy, the conspirators:

   a) Fabricated false allegations of misconduct against Dr. Whitaker;

   b) Manipulated the District's disciplinary process to target Dr. Whitaker;

   c) Violated established Board policies and procedures to expedite Dr. Whitaker's suspension and potential termination;

   d) Publicly disseminated false and defamatory information about Dr. Whitaker.

14

78. As a direct result of this conspiracy, Dr. Whitaker has suffered violations of her constitutional rights, damage to her professional reputation, loss of income, and severe emotional distress.

79. The actions of the conspirators were willful, wanton, and malicious, warranting the imposition of punitive damages.

Count IX: *Monell Claim - 42 U.S.C. § 1983*

80. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

81. Defendant Dolton West School District 148 Board of Education is a local governmental entity operating under the laws of the State of Illinois.

82. The District, through its final policymakers including the Board of Education and Superintendent Nohelty, maintained a policy, practice, or custom of discriminating against African American female administrators and retaliating against employees who raised concerns about fiscal mismanagement.

83. This policy, practice, or custom includes, but is not limited to:

   a) Subjecting African American female administrators to heightened scrutiny and harsher disciplinary measures compared to non-minority, non-male colleagues;

   b) Failing to properly investigate or address concerns raised by African American female administrators about fiscal management;

   c) Retaliating against African American female employees who reported potential misuse of public funds;

   d) Manipulating disciplinary processes to target African American female administrators who spoke out against misconduct;

15

e) Creating working conditions are so intolerable that a reasonable person in would be compelled to resign or retire.

84. The District's policy, practice, or custom of discrimination and retaliation was the moving force behind the constitutional violations suffered by Dr. Whitaker, including violations of her rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

85. The District's policymakers, including Superintendent Nohelty and the Board of Education, were aware of this discriminatory and retaliatory conduct but failed to take any action to prevent or address it, demonstrating deliberate indifference to the constitutional rights of Dr. Whitaker and other similarly situated employees.

86. As a direct and proximate result of the District's unconstitutional policy, practice, or custom, Dr. Whitaker has suffered damages including loss of income, emotional distress, and damage to her professional reputation.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.  Declare that the acts and conduct of Defendants constitute violations of 42 U.S.C. §§ 1981, 1983, and 1985(3), the Illinois Whistleblower Act, Illinois contract law, and constitute abuse of process and defamation under Illinois law;

B.  Award compensatory damages in an amount to be determined at trial, including but not limited to back pay, front pay, and damages for emotional distress and reputational harm;

C.  Award punitive damages against the individual defendants in an amount to be determined at trial;

16

D.  Grant injunctive relief, including reinstatement to her position as Deputy Superintendent and removal of any adverse employment actions from Plaintiff's personnel record;

E.  Award pre-judgment and post-judgment interest at the highest lawful rate;

F.  Award attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable statutes;

G.  Grant such other and further relief as this Court deems just and proper.


Respectfully submitted: **12/05/2024**          **The Yeary Firm, LLC**

By:  /s/          Sheridan T. Yeary
Sheridan Todd Yeary, Esq.; ID#: 201218001
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiff

**Hall-Jackson and Associates, P.C.**

By: /s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq.; ID#: 6312976
180 West Washington Street, Suite 820
Chicago, Illinois 60602
chj@hall-jacksonandassociates.com
312-255-7105
*Attorney for Plaintiff*

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

**The Yeary Firm, LLC**

By:   /s/        Sheridan T. Yeary
Sheridan Todd Yeary, Esq.; ID#: 201218001
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiff

**Hall-Jackson and Associates, P.C.**

By: /s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq.; ID#: 6312976
180 West Washington Street, Suite 820
Chicago, Illinois 60602
chj@hall-jacksonandassociates.com
312-255-7105
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DR. SONYA WHITAKER,

Plaintiff,

v.

DR. KEVIN J. NOHELTY, Superintendent
In his official and individual capacity, and
DOLTON WEST SCHOOL DISTRICT 148
BOARD OF EDUCATION,

Defendants.

Case No. 1:24-cv-08308

Hon. Franklin U. Valderrama

*****************************************************************

**FIRST AMENDED COMPLAINT - JURY TRIAL DEMANDED**

Plaintiff Dr. Sonya Whitaker, by and through her undersigned counsel, hereby submits this First Amended Complaint against Defendants Dr. Kevin J. Nohelty and Dolton West School District 148 Board of Education, alleging as follows:

## I. INTRODUCTION

This is a civil action seeking declaratory relief, injunctive relief, back pay, front pay, compensatory damages, punitive damages, and other remedies for violations of Plaintiff's constitutional and statutory rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Illinois Whistleblower Act, for breach of contract under Illinois law, for abuse of process under Illinois law, for defamation under Illinois law, and for civil conspiracy under 42 U.S.C. § 1985(3).

## II. PARTIES

1. Plaintiff, Dr. Sonya Whitaker, is an African American female residing in Chicago, Illinois, and was employed as Deputy Superintendent of Schools for Dolton West School District 148 from July 1, 2020, until her suspension without pay on September 5, 2024. She is a member of a protected class under federal law, including 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Dr. Whitaker is the only African American serving in a superintendent or deputy superintendent role in Dolton West School District 148. Dr. Whitaker reports directly to Defendant, Dr. Kevin J. Nohelty, Superintendent of Schools.

2. Defendant, Dr. Kevin Nohelty, is a Caucasian male, and is the Superintendent of Schools and Chief School Business Official for Dolton West School District 148, acting under color of state law within the meaning of 42 U.S.C. § 1983. He is sued in both his official and individual capacities.

3. Defendant, Dolton West School District 148 Board of Education, is a local governmental entity operating under the laws of the State of Illinois and is an employer within the meaning of relevant federal and state statutes.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, and 1985(3).

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they

form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all defendants reside in this district and a substantial part of the events giving rise to this action occurred within this district.

## IV. FACTUAL ALLEGATIONS

7. On October 22, 2019, Dr. Whitaker entered into a contractual agreement with Dolton West School District 148 to serve as Deputy Superintendent from July 1, 2020, to June 30, 2025. The contract with Dr. Whitaker was later extended to June 30, 2026. Dr. Whitaker is under contract as Deputy Superintendent of Schools as a professional employee.

8. Throughout her tenure, Dr. Whitaker consistently received "Excellent" performance ratings from Defendant Nohelty in all evaluated categories, including instructional leadership, school management, and community relations, for the 2020-2021, 2021-2022, and 2022-2023 school years. No deficiencies or performance related issues were noted by Defendant Nohelty during the performance evaluation periods, and no notice was ever given to Plaintiff Whitaker by Defendant Nohelty concerning performance related issues or suspected violations of Plaintiff Whitaker's contract.

9. In February 2024, the Board of Education approved a retroactive pay increase for Dr. Whitaker upon the recommendation of Defendant Nohelty, further demonstrating her exemplary performance.

10. On May 22, 2024, Dr. Whitaker personally raised concerns with the members of the board of education about her concerns related to fiscal management of the superintendent of schools. She requested the opportunity to speak with the board formally and on the record regarding her concerns. Her request was not granted.

11. On June 6, 2024, Dr. Whitaker again raised the concerns about the financial management of public funds within the District via voicemail to Board President Larry Lawrence, requesting that she needed to speak with the board president about her concerns related to fiscal management and the superintendent of schools. Specifically, Dr. Whitaker discovered that ESSER III funds were allocated to projects without proper documentation or board approval, potentially violating federal grant requirements. The board president indicated that he would grant Dr. Whitaker an audience with him upon his return from travel, however he never met with her nor allowed her to speak with the members of the board of education.

12. It was on the same day, June 6, 2024, that Dr. Whitaker also spoke with the board vice-president regarding her concerns, to no avail.

13. On June 10, 2024, and again on June 24, 2024, Dr. Whitaker raised concerns about the fiscal management of public funds directly with Defendant Nohelty, the superintendent of schools. Specifically, Dr. Whitaker raised concerns related to the reallocation of approximately thirteen million dollars ($13,000,000) of the federal Elementary and Secondary School Emergency Relief Funds (ESSER III).

14. Dr. Whitaker was directed by Defendant Nohelty to plan to make changes to the ESSER III Grant after the funds had already been allocated in the budget line item

statement as presented to the Illinois State Board of Education and to the Dolton West School District 148 board in numerous public board of education meetings.

15. Within two weeks of raising these concerns and refusing to participate in the wrongdoing, Dr. Whitaker was excluded from key meetings and decision-making processes, demonstrating a clear temporal connection between her protected activity and the adverse actions.

16. On July 2, 2024, without prior warning or following proper procedures as required in the District's policies, Defendant Nohelty suspended Dr. Whitaker with pay, without specific notice of the charges and in violation of the Board's policies. The notice indicated that the paid administrative leave was to end on July 15, 2024.

17. On, or about July 2, 2024, Defendant Nohelty tortiously and improperly interfered with Dr. Whitaker's employment contract by engaging members of the superintendent's cabinet to review Dr. Whitaker's previously approved reports to the Board of Education under the guise of finding misstatements or false content. Defendant Nohelty used the false "investigation" as an act of retaliation and to provide fraudulent support for the anticipated termination process, as was established in the testimony of members of the cabinet in the termination hearing of Dr. Whitaker that was held between September 23, 2024, and November 18, 2024.

18. On or about August 7, 2024, Dr. Whitaker spoke with the Deputy Officer for Instructional Education for the Illinois State Board of Education about her concerns, and confirmed those concerns in an email, detailing the content of their phone conversation.

19. On August 19, 2024, Defendant Nohelty issued a pre-suspension notification letter indicating the Board's intent to consider both suspension without pay and termination of Dr. Whitaker. The Defendants failed to comply with Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure by failing to provide proper notice and due process.

20. In the notice, Defendants accused Dr. Whitaker of 20 alleged acts of misconduct, including theft of public property and unlawful harassment.

21. On September 5, 2024, while violating board policies and procedures, Defendants suspended Dr. Whitaker without pay. This action was taken at a specially convened Board meeting where the agenda item regarding Dr. Whitaker was publicly posted to publicly humiliate Dr. Whitaker and causing emotional distress.

22. During the September 5, 2024, meeting Defendant Nohelty, through legal counsel, formally presented the charges against Dr. Whitaker to the full school board, including false accusations of theft, bullying, and falsification of student data. The meeting was held in open session and broadcast via the internet, causing further damage to Dr. Whitaker's reputation.

23. In September 2024, the Illinois State Board of Education issued School District Financial Profile Scores indicating that Dolton West School District 148 received the lowest financial profile of any reporting school district in the State of Illinois based on 2023 financial data, being placed on the financial watch list for the second year in a row.

24. In September 2024, members of the Dolton West School District 148 were made aware of the District's financial status in a report at a public session meeting of the

Board. Dr. Nohelty had not previously informed the Board of the District's financial condition.

25. Upon information and belief, Defendant Nohelty and Board President Lawrence held multiple private meetings to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation and refused to participate in the wrongdoing.

26. Dr. Whitaker, as the only African American in a senior leadership position, was subjected to heightened scrutiny and harsher disciplinary measures compared to her non-minority colleagues. For example, while Dr. Whitaker was suspended without pay for raising concerns about fiscal mismanagement, non-African American administrators who raised similar concerns were not disciplined or subjected to termination proceedings.

27. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

28. As a result of Defendants' actions, Dr. Whitaker has suffered loss of income exceeding $250,000, severe emotional distress, and significant damage to her professional reputation in the education community.

## V.    CLAIMS FOR RELIEF

### Count I: *Violation of 42 U.S.C. §1981*

29. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

30. Dr. Whitaker is an African American woman and is a member of a protected class under federal law.

31. Defendants' malicious and unwarranted actions have interfered with Plaintiff's contractual rights and constitute racial discrimination, in violation of 42 U.S.C. § 1981.

32. Defendant demonstrated similar malicious and unwarranted actions directed toward the African American female predecessor to Dr. Whitaker, Dr. Patricia Moore in 2019.

33. Defendant Nohelty''s demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker to her African American female curriculum coordinator, Dornetta Walker. Ms. Walker was a direct report to Dr. Whitaker.

34. Defendant Nohelty's demonstrated similar malicious and unwarranted actions that extended beyond Dr. Whitaker toward Dr. Lisa Davis-Smith, former director of state and federal grants. Dr. Davis left the district's employ in 2020.

35. Defendant's malicious and unwarranted actions have caused economic, emotional, and reputational harm to Dr. Whitaker.

36. The actions taken against Dr. Whitaker, including her suspension without pay and the initiation of termination proceedings, were motivated by racial animus and constituted intentional discrimination. Similarly situated non-African American employees, such as John Donermeyer, Melanie Llanes, and Nancy Perkins were

not subjected to the same adverse actions or level of scrutiny for actual performance deficiencies as Dr. Whitaker.

Count II: <em>First Amendment Retaliation</em> - 42 U.S.C. §1983

37. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

38. Defendants, acting under color of state law, violated Plaintiff's First Amendment rights by retaliating against her for protected speech on matters of public concern, namely the misuse of public funds.

39. Dr. Whitaker's speech regarding misallocation of federal funds is a matter of public concern as it directly affects the educational resources available to students and the proper use of taxpayer money.

40. Dr. Whitaker's reporting of potential misuse of ESSER III funds went beyond her official duties as Deputy Superintendent. She spoke as a private citizen on a matter of public concern when she raised these issues directly with the Board President and members of the Board of Education, which was outside her normal chain of command and not part of her regular job responsibilities.

41. Dr. Whitaker's interest in speaking out on this matter of public concern outweighs any governmental interest in efficiency.

42. There is a direct causal link between Dr. Whitaker's protected speech and the adverse employment actions taken against her, as evidenced by the close temporal proximity between her reports of misconduct and her suspension.

43. Defendants' actions caused emotional and reputational harm through the improper use of disciplinary action to chill Dr. Whitaker's constitutional right to speech and to inflict economic, reputational, and emotional harm on her.

### Count III: *Equal Protection Violation - 42 U.S.C. §1983*

44. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

45. Defendants, acting under color of state law, violated Plaintiff's Fourteenth Amendment right to equal protection by discriminating against her on the basis of race.

46. Dr. Whitaker was treated differently from similarly situated non-African American employees with respect to disciplinary actions, scrutiny of her work, and the application of district policies and procedures.

47. The disparate treatment of Dr. Whitaker was motivated by racial animus and lacked any rational basis.

48. As a result of this discriminatory treatment, Dr. Whitaker has suffered economic losses, emotional distress, and damage to her professional reputation.

### Count IV: *Violation of Illinois Whistleblower Act*

49. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50. The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., prohibits retaliation against employees who disclose information about suspected violations of state or federal laws, rules, or regulations.

51. Dr. Whitaker's reporting of potential misuse of federal funds to the Deputy Officer for Instructional Education for the Illinois State Board of Education falls squarely within the protected activities under the Illinois Whistleblower Act, as it involves disclosure of suspected violations of federal regulations governing grant fund usage to a third party.

52. Defendants' retaliatory actions against Dr. Whitaker for raising concerns about the financial management of public funds and refusing to participate in the wrongdoing violated Sections 15(a), 15(b), and 20.1 of the Illinois Whistleblower Act.

53. Defendants' retaliatory actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

*Count V: Breach of Contract*

54. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

55. Dr. Whitaker had a valid employment contract with Dolton West School District 148, which Defendants breached by suspending her without pay and attempting to terminate her employment without cause or proper procedures as outlined in the contract and District policies.

56. The District breached Dr. Whitaker's employment contract by suspending her without pay on September 5, 2024, without following the proper procedures outlined in Section 11(d) of her contract, which requires that, "[T]ermination of the Employee's employment shall be subject to the terms and procedures of the Illinois School Code."

57. Additionally, the District violated Board Policy 5:240 by failing to adhere to the District's policy when Defendant Nohelty failed to "meet with the employee to present the allegations and give the employee an opportunity to refute the charges" prior to her suspension.

58. The Board's adverse action to suspend Dr. Whitaker, first with pay then without pay, while knowingly and intentionally disregarding the board's policies concerning

such actions, establish the malicious and reckless harm done to Dr. Whitaker economically, emotionally, and to her reputation.

59. As a direct result of this breach, Dr. Whitaker has suffered economic losses, including lost wages and benefits.

Count VI: <em>Abuse of Process</em>

60. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

61. Defendants willfully misused the District's disciplinary process against Dr. Whitaker for an improper and ulterior purpose, namely to retaliate against her for her protected whistleblowing activity and to discriminate against her on the basis of race.

62. Defendants' actions were not proper in the regular prosecution of the proceedings, as they were motivated by retaliatory intent rather than legitimate disciplinary concerns.

63. Defendants took specific actions in furtherance of this abuse, including initiating suspension and termination proceedings without proper cause or following established procedures.

64. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

65. As a result of Defendants' abuse of process, Dr. Whitaker has suffered damage to her professional reputation, loss of income, and emotional distress.

Count VII: *Defamation*

66. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

67. Defendants knowingly made false and defamatory statements about Dr. Whitaker, including accusations of theft, bullying, and falsification of student data.

68. These statements were published to third parties during the September 5, 2024, board meeting, which was broadcast via the internet and widely disseminated.

69. The defamatory statements made by Defendants went beyond the scope of any privileged communication in administrative proceedings. Defendants maliciously publicized false accusations of theft and misconduct in open board meetings and through internet broadcasts, causing harm to Dr. Whitaker's reputation beyond what was necessary for any legitimate disciplinary purpose.

70. The false allegations have damaged Dr. Whitaker's reputation, causing her to suffer emotional distress and financial harm.

71. Defendants acted with actual malice, knowing the statements were false or with reckless disregard for their truth.

72. Defendants' actions caused economic, emotional, and reputational harm to Dr. Whitaker.

Count VIII: *Civil Conspiracy*

73. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

74. Defendant Nohelty and Board President Lawrence, acting in concert, engaged in a conspiracy to deprive Dr. Whitaker of her constitutional rights and to retaliate against her for her protected whistleblowing activities.

75. The conspirators held multiple private meetings to discuss and plan ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation.

76. Defendant Nohelty and Board President Lawrence engaged in a conspiracy that went beyond their official capacities and the scope of their employment. They held multiple private meetings outside of official board sessions to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation. These actions were taken to further their personal interests in concealing financial mismanagement, rather than in furtherance of any legitimate district business.

77. In furtherance of this conspiracy, the conspirators:

a) Fabricated false allegations of misconduct against Dr. Whitaker;

b) Manipulated the District's disciplinary process to target Dr. Whitaker;

c) Violated established Board policies and procedures to expedite Dr. Whitaker's suspension and potential termination;

d) Publicly disseminated false and defamatory information about Dr. Whitaker.

78. As a direct result of this conspiracy, Dr. Whitaker has suffered violations of her constitutional rights, damage to her professional reputation, loss of income, and severe emotional distress.

79. The actions of the conspirators were willful, wanton, and malicious, warranting the imposition of punitive damages.

Count IX: <em>Monell Claim - 42 U.S.C. § 1983</em>

80. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

81. Defendant Dolton West School District 148 Board of Education is a local governmental entity operating under the laws of the State of Illinois.

82. The District, through its final policymakers including the Board of Education and Superintendent Nohelty, maintained a policy, practice, or custom of discriminating against African American female administrators and retaliating against employees who raised concerns about fiscal mismanagement.

83. This policy, practice, or custom includes, but is not limited to:

    a) Subjecting African American female administrators to heightened scrutiny and harsher disciplinary measures compared to non-minority, non-male colleagues;

    b) Failing to properly investigate or address concerns raised by African American female administrators about fiscal management;

    c) Retaliating against African American female employees who reported potential misuse of public funds;

    d) Manipulating disciplinary processes to target African American female administrators who spoke out against misconduct;

e) Creating working conditions are so intolerable that a reasonable person in would be compelled to resign or retire.

84. The District's policy, practice, or custom of discrimination and retaliation was the moving force behind the constitutional violations suffered by Dr. Whitaker, including violations of her rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

85. The District's policymakers, including Superintendent Nohelty and the Board of Education, were aware of this discriminatory and retaliatory conduct but failed to take any action to prevent or address it, demonstrating deliberate indifference to the constitutional rights of Dr. Whitaker and other similarly situated employees.

86. As a direct and proximate result of the District's unconstitutional policy, practice, or custom, Dr. Whitaker has suffered damages including loss of income, emotional distress, and damage to her professional reputation.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A. Declare that the acts and conduct of Defendants constitute violations of 42 U.S.C. §§ 1981, 1983, and 1985(3), the Illinois Whistleblower Act, Illinois contract law, and constitute abuse of process and defamation under Illinois law;

B. Award compensatory damages in an amount to be determined at trial, including but not limited to back pay, front pay, and damages for emotional distress and reputational harm;

C. Award punitive damages against the individual defendants in an amount to be determined at trial;

D. Grant injunctive relief, including reinstatement to her position as Deputy Superintendent and removal of any adverse employment actions from Plaintiff's personnel record;

E. Award pre-judgment and post-judgment interest at the highest lawful rate;

F. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable statutes;

G. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted; 12/05/2024        The Yeary Firm, LLC.

                                          By:  /s/      Sheridan T. Yeary
                                          Sheridan Todd Yeary, Esq.; ID#; 201218001
                                          P.O. Box 682
                                          Columbia, MD 21045
                                          (202) 770-7204 (o); (410) 275-3199 (f)
                                          styeary@yearylegal.com
                                          Attorney for Plaintiff

                                          **Hall-Jackson and Associates, P.C.**

                                          By: /s/ Chiquita Hall-Jackson
                                          Chiquita Hall-Jackson, Esq.; ID#: 6312976
                                          180 West Washington Street, Suite 820
                                          Chicago, Illinois 60602
                                          chj@hall-jacksonandassociates.com
                                          312-255-7105
                                          *Attorney for Plaintiff*

17

## JURY TRIAL DEMAND

Plaintiff, demands a jury trial on all issues so triable.

### The Yeary Firm, LLC

By: /s/ Sheridan T. Yeary
Sheridan Todd Yeary, Esq.; ID#: 201218001
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiff

**Hall-Jackson and Associates, P.C.**

By: /s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq.; ID#: 6312976
180 West Washington Street, Suite 820
Chicago, Illinois 60602
chj@hall-jacksonandassociates.com
312-255-7105
*Attorney for Plaintiff*

18

*Dr. Sonya Whitaker v. Dr. Kevin J. Nohelty, Superintendent, in his official and individual capacity, and Dolton West School District 148 Board of Education*
Court No.: 24-cv-08308

# Exhibit B

aw Division Motion Section Initial Case Management Dates for SALE have be held in person.

ll other Law Division Initial Case Management Dates will be heard via Zoom
or more information and Zoom Meeting IDs go to https.//www.cookcountycourt,org/HOME?Zoom-Links?Agg4906_SelectTab/12
ourt Date: 6/30/2025 9:30 AM

FILED
4/30/2025 1:53 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L005724
Calendar, I
32508047

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

DR. SONYA WHITAKER,        *
    Plaintiff,          *
                *

      v.            *
                *.   Civil Case No.: _____

DR. KEVIN J. NOHELTY, Superintendent,   *
In his official and individual capacity, and     *
                *

DOLTON WEST SCHOOL DISTRICT   *
148 BOARD OF EDUCATION,     *
      Defendants.      *
                *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Dr. Sonya Whitaker, by and through her undersigned counsel, hereby submits this Amended Complaint against Defendants Dr. Kevin J. Nohelty and Dolton West School District 148 Board of Education, stating as follows:

### I.   INTRODUCTION

1. This is a civil action seeking declaratory relief, injunctive relief, back pay, front pay, compensatory damages, liquidated damages, and other remedies for violations of Plaintiff's rights under the Illinois Whistleblower Act, breach of employment contract, violations of due process, defamation, and tortious interference with contract.

### II.   PARTIES

2. Plaintiff, Dr. Sonya Whitaker, is a resident of Chicago, Cook County, Illinois, and was wrongfully terminated as the Deputy Superintendent of Schools for Dolton West School District 148 as of January 16, 2025, as confirmed in the termination letter dated January 21, 2025. Dr. Whitaker reported directly to Defendant, Dr. Kevin J. Nohelty, Superintendent of Schools.

1

3. Defendant, Dr. Kevin Nohelty, is the Superintendent of Schools and Chief School Business Official for Dolton West School District 148. He is sued in both his official and individual capacities.

4. Defendant, Dolton West School District 148 Board of Education, is a local public entity as defined by 745 ILCS 10/1-206 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, operating under the laws of the State of Illinois.

## III.   JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims in this action as they arise under the laws of the State of Illinois.

6. Venue is proper in this district pursuant to 735 ILCS 5/2-101, as the transactions out of which this cause of action arose occurred in Cook County, Illinois, and all defendants reside or have their principal place of business in Cook County.

## IV.   FACTUAL ALLEGATIONS

7. On October 22, 2019, Dr. Whitaker entered into a contractual agreement with Dolton West School District 148 to serve as Deputy Superintendent from July 1, 2020, to June 30, 2025. The contract with Dr. Whitaker was later extended to June 30, 2026. Dr. Whitaker is under contract as Deputy Superintendent of Schools as a professional employee.

8. Throughout her tenure, Dr. Whitaker consistently received "Excellent" performance ratings from Defendant Nohelty in all evaluated categories, including instructional leadership, school management, and community relations, for the 2020-2021, 2021-2022, and 2022-2023 school years. No deficiencies or performance related issues

2

were noted by Defendant Nohelty during the performance evaluation periods, and no notice was ever given to Plaintiff Whitaker by Defendant Nohelty concerning performance related issues or suspected violations of Plaintiff Whitaker's contract.

9. In February 2024, the Board of Education approved a retroactive pay increase for Dr. Whitaker upon the recommendation of Defendant Nohelty, further demonstrating her exemplary performance.

10. On May 22, 2024, Dr. Whitaker personally raised concerns with the members of the board of education about her concerns related to fiscal management of the superintendent of schools. She requested the opportunity to speak with the board formally and on the record regarding her concerns. Her request was not granted.

11. On June 6, 2024, Dr. Whitaker again raised the concerns about the financial management of public funds within the District via voicemail to Board President Larry Lawrence, requesting that she needed to speak with the board president about her concerns related to fiscal management and the superintendent of schools. Specifically, Dr. Whitaker discovered that ESSER III funds were allocated to projects without proper documentation or board approval, potentially violating federal grant requirements. The board president indicated that he would grant Dr. Whitaker an audience with him upon his return from travel, however he never met with her nor allowed her to speak with the members of the board of education.

Dr. Whitaker's ESSER III fund concerns included:

a. $13M reallocated without board approval (June 2024)

b. Documentation gaps violating financial control standards

c. ISBE watchlist confirmation

3

12. It was on the same day, June 6, 2024, that Dr. Whitaker also spoke with other board members seeking an audience regarding her concerns, to no avail.

13. On June 10, 2024, and again on June 24, 2024, Dr. Whitaker raised concerns about the fiscal management of public funds directly with Defendant Nohelty, the superintendent of schools. Specifically, Dr. Whitaker raised concerns related to the reallocation of approximately thirteen million dollars ($13,000,000) of the federal Elementary and Secondary School Emergency Relief Funds (ESSER III).

14. Dr. Whitaker was directed by Defendant Nohelty to plan to make changes to the ESSER III Grant after the funds had already been allocated in the budget line-item statement as presented to the Illinois State Board of Education and to the Dolton West School District 148 board in numerous public Board of Education meetings.

15. Within two weeks of raising these concerns and refusing to participate in the wrongdoing, Dr. Whitaker was excluded from key meetings and decision-making processes, demonstrating a clear temporal connection between her protected activity and the adverse actions.

16. On July 2, 2024, without warning or following proper procedures as required in the District's policies, Defendant Nohelty suspended Dr. Whitaker with pay, without specific notice of the charges and in violation of the Board's policies. The notice indicated that the paid administrative leave was to end on July 15, 2024.

17. On, or about July 2, 2024, Defendant Nohelty engaged members of the superintendent's cabinet to review Dr. Whitaker's previously approved reports to the Board of Education under the guise of, and as pretext for claiming to find misstatements or false content. Defendant Nohelty used the false "investigation" as an act of retaliation and to provide fraudulent support for the anticipated termination

4

process, as was established in the testimony of members of the cabinet in the termination hearing of Dr. Whitaker that was held between September 23, 2024, and November 18, 2024.

18. On or about August 7, 2024, Dr. Whitaker spoke with the Deputy Officer for Instructional Education for the Illinois State Board of Education about her concerns, and confirmed those concerns in an email, detailing the content of their phone conversation.

19. On August 19, 2024, Defendant Nohelty issued a pre-suspension notification letter indicating the Board's intent to consider both suspension without pay and termination of Dr. Whitaker. The Defendants failed to comply with Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure by failing to provide proper notice and due process.

20. In the notice, Defendants accused Dr. Whitaker of 20 alleged acts of misconduct, including theft of public property and unlawful harassment.

21. In September 2024, the Illinois State Board of Education issued School District Financial Profile Scores indicating that Dolton West School District 148 received the lowest financial profile of any reporting school district in the State of Illinois based on 2023 financial data, being placed on the financial watch list for the second year in a row. This report directly corroborates Dr. Whitaker's concerns about financial mismanagement within the District.

22. In September 2024, members of the Dolton West School District 148 were made aware of the District's financial status contained in the report at a public session meeting of the Board. Dr. Nohelty had not previously informed the Board of the District's financial condition.

5

23. On September 5, 2024, Hon. Mathias Delort was appointed by the Board of Education to serve as the independent hearing officer during the pre-termination process.

24. Dr. Sonya Whitaker, nor her counsel were permitted to participate in the selection process of the independent hearing officer.

25. During the September 5, 2024, Board meeting, Hearing Officer Delort was asked about prior relationships with either of the firms involved in the investigation and administrative processes against Dr. Whitaker. Hearing Officer Delort indicated no prior relationship with the firms. However, Hearing Officer Delort failed to disclose to the Board that he had worked with the board attorney who conducted the investigation into the allegations against Dr. Whitaker, and who had also reached out to him to recruit his service as independent hearing officer.

26. Upon information and belief, Defendant Nohelty and Board President Lawrence held multiple private meetings to discuss ways to remove Dr. Whitaker from her position after she raised concerns about fund misallocation and refused to participate in the wrongdoing.

27. Upon information and belief, Defendant Nohelty and Board Chair Lawrence tortiously secured the termination testimony against Dr. Whitaker by manipulating the Board of Education to approve multi-year contracts for witnesses who would be relied upon to testify against Dr. Whitaker during the pre-termination hearing.

28. Defendants manipulated the disciplinary process by presenting unsubstantiated allegations and deliberately violating established procedures to expedite Dr. Whitaker's removal without proper investigation or due process. This misuse of the process was intended to silence Dr. Whitaker's protected speech regarding

6

misallocation of funds and to retaliate against her for raising these concerns, rather than to address any legitimate disciplinary issues.

29. Hearing Officer Delort oversaw several days of the pre-termination hearing from September thru December 2024. At no point during this period did Hearing Officer Delort update the Board concerning his prior relationship with Board counsel.

30. During the pre-termination hearings, Dr. Whitaker requested to call members of the Board of Education as fact witnesses in her matter, as many of the allegations made by employees referenced alleged conduct by Dr. Whitaker in the presence of named Board members.

31. The request to call current members of the Board of Education became necessary after the District's counsel objected to the former board chair of the District coming to testify due to standing court orders prohibiting the former member's presence on District grounds and the District's assertion that it would not lift the no trespass order that had been issued.

32. The District was then tasked with making technology considerations for remote testimony. Those considerations were not achieved.

33. After brief argument from counsels before the Hearing Officer, the request to call members of the Board of Education was denied, constituting a constraint on Dr. Whitaker's due process rights under *Stratton v. Wenona Cmty. Unit Dist. No. 1*, 2022 IL App (3d) 210187.

34. On December 20, 2024, Hearing Officer Delort issued the Final Report and Recommendations concerning Dr. Whitaker. In the report, Hearing Officer Delort describes the acknowledgement of the prior working relationship with District counsel who had investigated Dr. Whitaker, and had recruited him to serve as

7

hearing officer. That disclosure, per the report, took place on September 20, 2024. However, that disclosure was never shared with the Board to determine whether a conflict existed that would inhibit Dr. Whitaker's right to a fair hearing.

35. Hearing Officer Delort's report also makes substantive errors indicating a grave misunderstanding of the process to be followed. Namely, Hearing Officer Delort considered the September 5, 2024, suspension hearing before the Board of Education the "pre-termination hearing." Further, Hearing Officer Delort references the actual hearing conducted between September and December 2024, as the "post-termination hearing."

36. On January 16, 2025, Dr. Whitaker was terminated from her role with Dolton West School District 148 Board of Education at the direction of Dr. Nohelty, as confirmed in the termination letter dated January 21, 2025, which referenced the Board's adoption of Hearing Officer Delort's Final Report and Recommendations.

37. There has been no notice of, nor a setting for any such "post-termination hearing" in this matter.

38. But for Dr. Whitaker's protected whistleblowing activities regarding the misallocation of ESSER III funds, she would not have been subjected to adverse employment actions culminating in her termination.

39. As a result of Defendants' actions, Dr. Whitaker has suffered loss of income exceeding $250,000, severe and extreme emotional distress, legal fees and costs, and significant damage to her professional reputation in the education community.

8

V.  **CLAIMS**

## COUNT I – VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT
*(All Defendants)*

40. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

41. The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., as amended effective January 1, 2025, prohibits retaliation against employees who disclose information about suspected violations of state or federal laws, rules, or regulations.

42. Pursuant to the Illinois Whistleblower Act (740 ILCS 174/15 and 174/20): an Employer may not retaliate against any employee for disclosing information to agencies or refusing to participate in an activity in which the employee had "reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

43. The 2025 amendments to the Illinois Whistleblower Act expanded the definition of "retaliatory action" to include any action that would dissuade a reasonable worker from engaging in protected activity, increased available remedies to include liquidated damages, and provided for civil penalties up to $10,000 per violation.

44. Dr. Whitaker reasonably believed that Defendant Nohelty misused federal funds when $13 million dollars of ESSER III funds were reallocated and the ESSER III budget was revised by Defendant Nohelty without complete disclosure to the Board.

45. Dr. Whitaker's reporting of potential misuse of federal funds falls squarely within the protected activities under the Illinois Whistleblower Act, as it involves disclosure of suspected violations of federal regulations governing grant fund usage based on a reasonable belief.

46. Dr. Whitaker engaged in protected activity when she:

9

Case 1:25-cv-01605 Document #: 38-12 Filed: 06/06/25 Page 57 of 64 PageID #:1789

a.  Raised concerns with board members on May 22, 2024;

b.  Reported concerns to Board President Lawrence on June 6, 2024;

c.  Reported concerns to the board vice-president on June 6, 2024;

d.  Reported concerns to Defendant Nohelty on June 10 and June 24, 2024; and

e.  Reported concerns to the Illinois State Board of Education on August 7, 2024.

47. Defendants' retaliatory actions against Dr. Whitaker included:

a.  Exclusion from key meetings within two weeks of her protected activity;

b.  Suspension with pay on July 2, 2024;

c.  Initiation of a pretextual investigation on July 2, 2024;

d.  Pre-suspension notification on August 19, 2024;

e.  Suspension without pay on September 5, 2024;

f.  Public humiliation through broadcast of defamatory allegations on September 5, 2024; and

g.  Termination on January 16, 2025.

48. But for Dr. Whitaker's protected whistleblowing activities, Defendants would not have taken these adverse actions against her.

49. The temporal proximity between Dr. Whitaker's protected activities and the adverse employment actions, combined with her history of excellent performance evaluations and recent merit pay increase, demonstrates a clear causal connection between her whistleblowing and the retaliation she suffered.

50. Defendants' retaliatory actions against Dr. Whitaker violated Section 15(b) of the Illinois Whistleblower Act when they terminated her employment with the District on January 16, 2025.

10

51. Defendants' retaliatory actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

## COUNT II – BREACH OF EMPLOYMENT CONTRACT
*(All Defendants)*

52. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

53. Dr. Whitaker entered into a valid and enforceable employment contract with Dolton West School District 148 on October 22, 2019, which was later extended through June 30, 2026.

54. Dr. Whitaker performed all duties required under the contract and consistently received "Excellent" performance ratings.

55. Defendants breached the employment contract by terminating Dr. Whitaker without proper cause and in violation of the contractual terms governing termination procedures.

56. Defendants' breach of contract has caused Dr. Whitaker to suffer damages including lost wages, benefits, and other compensation she would have received had the contract been honored through its full-term ending June 30, 2026.

57. Defendants' actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

## COUNT III – DUE PROCESS VIOLATIONS
*(All Defendants)*

58. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

59. As a public employee with a contractual right to continued employment through June 30, 2026, Dr. Whitaker had a protected property interest in her continued employment.

11

60. Article I, Section 2 of the Illinois Constitution of 1970 provides: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

61. Board Policy 5:240 on Suspension and Policy 2:260 on Uniform Grievance Procedure establish specific procedural requirements that must be followed before an employee can be suspended or terminated.

62. Defendants violated these policies and Dr. Whitaker's due process rights under the Illinois Constitution by:

   a. Failing to follow the progressive discipline procedures outlined in District policies;

   b. Denying Dr. Whitaker the opportunity to call and question named members of the Board who had been referenced as being present for some of the alleged incidents that the District maintained constituted a violation of District policy;

   c. Failing to provide adequate notice and a meaningful opportunity to be heard prior to termination.

63. These procedural violations deprived Dr. Whitaker of her right to fair process before being deprived of her property interest in continued employment, as required by Illinois law (*Stratton v. Wenona Cmty. Unit Dist. No. 1*, 2022 IL App (3d) 210187; *Lewis E. v. Spagnolo*, 186 Ill. 2d 198 (1999)).

64. Defendants' actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

### COUNT IV – COMMON LAW RETALIATORY DISCHARGE
*(All Defendants)*

65. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

12

66. Plaintiff was discharged from her position as Deputy Superintendent on January 16, 2025, by Defendants' adoption of Hearing Officer Delort's recommendation.

67. Plaintiff engaged in protected activity under Illinois public policy by:

   a. Reporting misuse of $13M in federal ESSER III funds to internal administrators (May–June 2024);

   b. Refusing to participate in unlawful reallocation of funds as directed by Defendant Nohelty (June 24, 2024);

   c. Disclosing financial mismanagement to the Illinois State Board of Education (August 7, 2024).

68. Plaintiff's termination violates Illinois' clearly mandated public policy, as articulated in:

   a. The Illinois Constitution's guarantee of government integrity (Ill. Const. 1970, Preamble; Art. VIII, §1);

   b. Federal grant compliance regulations (2 C.F.R. §200.302);

   c. The Illinois Whistleblower Act's recognition of public fund misuse as a matter of statewide concern (740 ILCS 174/5).

69. The temporal proximity between Plaintiff's protected activity (final report: June 24, 2024) and her suspension (July 2, 2024) and termination (January 16, 2025), combined with Defendants' pretextual investigation and denial of due process, establishes retaliation as the motivating factor for discharge (*Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494 (2009)).

70. Plaintiff suffered lost wages exceeding $250,000, emotional distress, reputational harm, and loss of career advancement opportunities.

71. Plaintiff engaged in protected activity by repeatedly disclosing, both internally and externally, her reasonable belief that Defendant Nohelty was misallocating and mismanaging federal ESSER III funds, in violation of federal grant requirements and state law.

72. Plaintiff's protected disclosures included, but were not limited to:

    a. Raising concerns with members of the Board of Education on May 22, 2024;

    b. Reporting concerns to Board President Lawrence and the board vice-president on June 6, 2024;

    c. Reporting concerns to Defendant Nohelty, Superintendent, on June 10 and June 24, 2024;

    d. Reporting concerns to the Illinois State Board of Education on August 7, 2024.

73. Plaintiff also refused to participate in the misallocation of federal funds, as directed by Defendant Nohelty, which would have constituted a violation of federal law.

74. In direct retaliation for Plaintiff's protected disclosures and refusal to participate in unlawful conduct, Defendants subjected Plaintiff to escalating adverse employment actions, culminating in her retaliatory dismissal on January 16, 2025.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT
*(All Defendants)*

75. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

76. Dr. Whitaker had a valid contractual relationship with Dolton West School District 148 through June 30, 2026.

77. Defendant Nohelty was aware of this contractual relationship and had recommended extensions to Dr. Whitaker's initial contract terms.

14

78. Defendant Dolton West School District 148 Board of Education was aware of the contractual relationship with Dr. Whitaker as the Board of Education ratified all personnel actions concerning performance, contract terms, and salary since Dr. Whitaker first joined the District in 2019.

79. Defendant Nohelty intentionally and unjustifiably induced the Board to breach Dr. Whitaker's employment contract by:

   a. Initiating the completion of a pretextual investigation report on July 2, 2024;

   b. Engaging cabinet members (District employees) to review previously Superintendent-approved reports to find or fabricate evidence against Dr. Whitaker;

   c. Presenting false allegations to the Board without factual basis;

   d. Recommending Dr. Whitaker's suspension and termination without legitimate cause;

   e. Recommending Dr. Whitaker's termination for conduct wherein Dr. Whitaker had not been given notice concerning the alleged acts prior to the adverse actions being initiated;

   f. Defendant Nohelty acted to conceal fiscal mismanagement by initiating Dr. Whitaker's termination for conduct that Dr. Whitaker had received no notice; and

   g. Holding private meetings with Board President Lawrence to orchestrate Dr. Whitaker's removal.

80. Defendant Nohelty and Board Chair Larry Lawrence worked in concert to remove Dr. Whitaker from her position.

15

81. Board Chair Larry Lawrence improperly influenced the process of Dr. Whitaker's eventual termination by making it clear to other board members that he intended to "take care of Whitaker."

82. Board Chair Lawrence improperly and tortiously used his position to deny Plaintiff Whitaker of due process in her protected interest of her employment as Deputy Superintendent by coordinating with members of the Board of Education the eventual actions taken against Plaintiff Whitaker.

83. As a direct result of Defendant Nohelty and the Board of Education's tortious interference, Dr. Whitaker's employment contract was breached, causing her significant financial and professional harm.

84. Defendants' actions against Dr. Whitaker caused economic, emotional, and reputational harm to Dr. Whitaker.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests:

a. Issue a declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of Illinois;

b. Issue an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

c. Award damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm in excess of $250,000.00;

d. Award compensatory damages in an amount to be determined at trial, including but not limited to back pay, front pay, retirement contribution, and damages for emotional distress and reputational harm;

16

e. Award liquidated damages under the amended Illinois Whistleblower Act;

f. Impose civil penalties against Defendants up to $10,000 as provided under the amended Illinois Whistleblower Act;

g. Grant injunctive relief, including reinstatement of Dr. Whitaker to her position as Deputy Superintendent and removal of any adverse employment actions from Plaintiff's personnel record;

h. Award pre-judgment and post-judgment interest at the highest lawful rate;

i. Award attorney's fees and costs pursuant to applicable statutes;

j. Grant such other and further relief as this Court deems just and proper.

**Dated:** April 28, 2025                Respectfully submitted,

/s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson, Esq., #57528
Hall-Jackson & Associates, PC
180 West Washington Street, Suite 820
Chicago, IL 60602
(312) 255-7105
chj@hall-jacksonandassociates.com
*One of Plaintiff's Attorneys*

/s/ Sheridan "Todd" Yeary
Sheridan "Todd" Yeary, Esq., #102472
The Yeary Firm, LLC
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
*One of Plaintiff's Attorneys*